JAMES M. GREEN ET AL. *v.* DAVID LAKE.

1. NUISANCE. : *Injunction against. Chancery jurisdiction.*
   To restrain by injunction the use of property by the owner, on the allegation that such use will be an annoyance and injurious to the property of another, is a very delicate branch of chancery jurisdiction.

2. SAME. *Use of property in city.*
   The law characterizes certain uses of property in a crowded city as nuisances *per se*, while others may become nuisances, though the use itself is lawful.

3. SAME. *Corn and flouring mill.*
   A corn and flouring mill is not *per se* a nuisance in a city.

4. SAME.  *Right must be established at law.*
   Generally a court of equity will refuse relief until the complainant has
     established at law the existence of the nuisance, and will not act if
     his right is controverted or not clear.

5. SAME.  *When private action lies to abate a public nuisance.*
   To abate a public nuisance the public authority must move.  A private
     action, either at law or in equity, will not lie, unless the plaintiff has
     sustained special damage.

6. SAME.  *Irreparable injury.*
   To obtain relief in equity for a private nuisance, the threatened injury
     must be irreparable, incapable of compensation in damages, and not
     doubtful or contingent.

7. SAME.  *Appliances to remedy evils.  Injunction not perpetuated, if they
   can be made.*
   A court of equity will not make perpetual an injunction against the
     lawful use of a flouring and corn mill in a city, on the allegations of
     noise by the machinery, danger of fire from the engines, and of disease
     from the accumulation of filth and bad odors, if the grievances can be
     remedied by scientific and skilful appliances, but will require such
     appliances to be used.

8. SAME.  *Legislative and municipal control.*
   The legislature and municipal authorities may assign limits to a noisome
     trade.

APPEAL from the Chancery Court of Monroe County.

Hon. L. HAUGHTON, Chancellor.

This bill, by James M. Green, U. McAllister and Unity
Hampton, alleges that the complainants own and occupy resi-
dences, where they have lived for years, near each other, in
the western part of Aberdeen, on and near the main street,
a part of said city dedicated to residences; that, some years
since, David Lake leased lots opposite Green's, nearly opposite
McAllister's, and a little north of Hampton's, and built on
them a large wooden structure, representing that it was to be
used in dressing plank, but fitted it up as a grist-mill, with a
steam-engine and fixtures, and has run the same ever since,
until about Jan. 1, 1877, when it was temporarily stopped by
a snow-storm; that the use of the building as a steam-mill
causes inconvenience and injury to the complainants and their
families by the noise, which is painful to the ear when well,
and when sick is almost intolerable; that the sparks from
the pipe endanger their houses, have several times set fire to

Green's, and create in the complainants uneasiness and the fear that, if fire should occur after night, some of their families might lose their lives; that the mill is loosely built of inflammable material, and liable to catch fire, and that if it should, the residences of Green and McAllister, on account of their proximity, would be destroyed; on which account they have difficulty in getting insurance, and have to pay a larger rate of premium; that the defendant has lately built a frame house, a little south of the mill, near Hampton's residence, to be used for ginning cotton; but it is now used for storing cotton-seed, and that, on account of the material subject to decay which accumulates about the mill and this building, the danger of local disease is increased, and the value of their residences diminished; that when the mill was started the complainants understood that the lots were only leased by Lake for five years, and, supposing that after that time it would be discontinued, they bore it with patience, but that they now learn that Lake has bought the lots, and will continue the mill, enlarge it and connect it with other employments, increasing the noise, danger and causes of disease perpetually unless restrained. The bill charges that the mill is a nuisance to the complainants, to other citizens of the neighborhood, and to all the people of Aberdeen, and ought to be abated. The prayer is that Lake be summoned as defendant, and required to answer; that the mill be abated as a nuisance, and Lake enjoined from continuing it, or any other steam-mill, on the lots; and for general relief.

Lake's demurrer assigns as causes —

1. That the bill shows no ground of equity jurisdiction, and that the complainants' only remedy is at law.

2. That it shows no case of strong and imperious necessity, and does not show that the complainants' rights have been established at law.

3. That it shows a public nuisance, and does not allege that the complainants suffer any injury different in kind from the public at large.

4. That it does not show that the defendant's mill is not the reasonable use of a lawful trade in a convenient place.

5. That it does not allege that the noise is unusually great,

or greater than that of other mills, or that the distress to the sick is greater than that caused by other wholly innocent occupations.

6. That the allegations about storing cotton-seed, and accumulation of decaying material, are not statements of existing facts, but vague estimates of future evil consequences of possible wrongs.

7. That the bill does not show that the danger from fire is necessarily connected with the mill, or that it might not be easily averted by other means than the relief prayed.

8. That the injuries, present and prospective, are not such as will warrant the relief.

There was a decree sustaining the demurrer, and, on the complainants declining to amend, dismissing the bill. The complainants appealed.

*Reuben Davis,* for the appellants, cited Eden on Injunctions, 269; 2 Story Eq. Jur. §§ 924, 925; 12 Pet. 98; *Whitfield* v. *Rogers,* 26 Miss. 84; 3 Atk. 31; *Lane* v. *Newdigate,* 10 Ves. 192; 2 Am. Ch. Dig. 137, §§ 13, 14.

*Murphy, Sykes & Bristow,* for the appellee, cited 1 Hilliard on Torts, 556; *Smith* v. *Lockwood,* 13 Barb. 209; *Smith* v. *Boston,* 7 Cushing, 254; *Soltau* v. *De Held,* 2 Sim. 133; *Harvard College* v. *Stearns,* 15 Gray, 1; *Lansing* v. *Smith,* 8 Cow. 151; *Butler* v. *Kent,* 19 Johns. 226; *Hartshorn* v. *South Reading,* 3 Allen, 501; *Hole* v. *Barlow,* 4 Scott, 334; s. c. 93 Eng. C. L. 333; *Harrison* v. *Brooks,* 20 Ga. 537; *Crowder* v. *Tinkler,* 19 Ves. 617; *Rhodes* v. *Dunbar,* 57 Penn. St. 274; *Gwin* v. *Melmoth,* Freem. Ch. 505; *First Baptist Church* v. *Utica Railroad,* 6 Barb. 313; *Williams* v. *New York Central Railroad,* 18 Barb. 222; *Walter* v. *Selfe,* 4 De Gex & S. 315; *Street* v. *Tugwell,* 2 Selwyn, 1047; *Rosser* v. *Randolph,* 7 Porter, 238; *Day* v. *Day,* 4 Md. 262; *Dumesnil* v. *Dupont,* 18 B. Mon. 800; *Hudson* v. *Maddison,* 12 Sim. 416.

SIMRALL, C. J., delivered the opinion of the court.

The *gravamen* of the bill is that the corn and flouring mill of the defendant Lake is a nuisance to the complainants and other citizens of the immediate neighborhood, and to the whole people of the city of Aberdeen, and ought to be abated and

perpetually enjoined from being run where it is now located. The prayer conforms to the grievances complained of. The special injuries suffered by the complainants are the noise created by running the machinery, danger of fire from sparks to the residences and outhouses of one or more of the complainants, and liability to disease from the accumulations around the mill, and from another building on the premises, in which cotton-seed is stored. The complainants aver that they have borne these injuries from the defendant for about five years, supposing that they would come to an end from the expiration of the defendant's lease of the premises; but that they have learned that he has bought the lots, and become owner, and that the nuisances will be continued.

Perhaps the most delicate jurisdiction ever exercised by a Court of Chancery is to restrain, by injunction, the use of property by the owner, on the allegation that such use will be annoying, or injurious to the property of another. *Sic utere tuo ut alienum non lœdas* is the maxim of the common law. A proprietor cannot convert his property into a nuisance to the detriment of others. Certain uses of property in a crowded city the law would characterize as nuisances *per se*, and would abate; such as bone-boiling, horse-boiling establishments, swine-yards, slaughter-houses, and the like, which emit poisonous effluvia, tainting the atmosphere with offensive odors and the seeds of disease. Other uses of property may become nuisances, though the use itself is lawful. A corn and flouring mill is not *per se* a nuisance in a city, nor is a blacksmith shop, nor a foundry, nor a steam-engine, which emits smoke, makes noise, and is liable to set buildings on fire. These and such employments are the necessities of modern society.

Generally, a court of equity will not entertain a bill, until the right of the complainant has been established at law. If the right is controverted, or not clear, it will refuse relief, until the fact that a nuisance exists has been established by a suit at law. 2 Story Eq. Jur. §§ 925–925 *f*. The complainants allege that Lake, the defendant, about five years before they filed their bill, erected the mill, and has been running it ever since, except at short intervals, but do not allege that they or

either of them warned him when he commenced building that his mill would be dangerous or injurious to them and their property, nor that they have ever applied to him to use any appliance on the chimney to prevent the escape of sparks, or suggested any precaution by which the danger from fire would be diminished.   Since no complaint was made for the five years that Lake held the property as lessee, it would be a very serious matter to him, when he had made further investments, and become absolute owner, to be, without warning, arrested in the further prosecution of his business.   The complainants prefer to live in a city from motives which induce others to do the same thing in numbers sufficient to constitute a city.   Such a community has its advantages and its inconveniences.   Of the latter are dust, smoke, noise and increased risk of conflagration.   The elements which make up the city are its trade, commerce and manufactures; incident to them are the noise of machinery, the presence of dust, and air less pure than in the country.   It was truthfully said by the Chancellor, in *St. Helen's Smelting Co.* v. *Tipping*, 11 H. L. Cas. 642, 650, "If a man lives in a town, it is necessary that he should subject himself to the consequences of those operations of trade which may be carried on in his immediate locality, which are actually necessary for trade and commerce, and also for the enjoyment of property."   Surely it would not be pretended that a flouring and corn mill is *per se* a nuisance. But the complainants allege this one to be a nuisance, because of the circumstances detailed.

To abate a public nuisance, the public authority must move. A private action, either at law or in equity, will not lie, unless the plaintiff has sustained some special damage.  *Bigelow* v. *Hartford Bridge Co.*, 14 Conn. 565; *Baxter* v. *Winooski Turnpike Co.*, 22 Vt. 114, 121.   The complainant must sustain a special or peculiar damage, — an injury distinct from that done to the public at large.   *O'Brien* v. *Norwich & Worcester Railroad*, 17 Conn. 372.   In *Smith* v. *Boston*, 7 Cushing, 254, the action was at law for discontinuing a portion of a street. After stating that the nuisance, if any, was public, and therefore injurious to the community, the court examined the plaintiff's right to damages, and said that he must suffer " a

peculiar and special damage, not common to the public, as by driving upon an obstruction in the night, and injuring his horse." On account of his proximity to the obstruction, the plaintiff may suffer more in degree but not different in kind from others. The same view is repeated in *Brainard* v. *Connecticut River Railroad,* 7 Cushing, 506, 510.

But do the complainants bring their case within the settled rules of a Court of Chancery. If they intend by the allegations recited that the establishment of Lake is a public nuisance, they have no right of suit at law for damages, or in equity for perpetual injunction, unless they sustain peculiar and special injuries of the character just considered. But if they mean no more than to affirm that the use of the property is a private nuisance as to themselves specially, then the principle is the same. Irreparable injury lies at the foundation of relief in equity, which must be so great as to be incapable of compensation in damages. Hilliard on Injunctions, 269, 270. Equity will not relieve if the injury be doubtful, eventual or contingent. *Butler* v. *Rogers,* 1 Stock. (N. J.) 487. Nor ought so peremptory an interdict to be laid on the defendant's use of his property, if the evils which are said to exist may be obviated by proper precautions. If the chimneys should be elevated so high as to discharge the smoke in the upper air, that annoyance to the complainants would be obviated. So a spark-arrester might be placed in the chimney to prevent from that source the danger of firing the complainants' houses. So, if the boiler and furnace are not sufficiently guarded, proper structures might be put around them, to guard against the escape of fire. The noise complained of is not specifically analyzed in the bill. Whether it proceeds from the puffing of the engine or the rumbling of the machinery is not stated. Whether it is more than is usual to such mills is not alleged.

A perpetual injunction against the lawful use of property in a city ought not to be decreed if the owner can apply to his steam power and machinery such alterations and appliances as will relieve them from the special and unusual annoyances complained of in this case. A chancellor ought to be well satisfied that the grievance is serious and well founded, and that there

is no remedy short of the cessation of such use before he will abate it as a nuisance by injunction. The case must be urgent for him to do so before the complainant has established the existence of the nuisance at law. If the grievances can be removed by the aid of science and skill, a court of equity will go no further than to require those things to be done. The legislature and the local municipal authorities have ample power to regulate the business of the city so as to produce as little inconvenience and annoyance to the different classes of its population as possible. Noisome and offensive trades may be assigned certain limits.

It does not appear that the authorities of Aberdeen have ever declared that Lake's mill was improperly located, or that such establishments should not be carried on in the neighborhood where his is located. The merchant, mechanic, manufacturer, butcher, laborer and professional man, as well as those of wealth and leisure, constitute the city. They all have rights, and they ought to be so accommodated that each may enjoy his property and pursue his calling under the regulations prescribed by the authorities, without inflicting unnecessary and reasonably avoidable injury on others or their property.

If there should be such accumulation of filth about the mill as is apprehended, the remedy is easy and plain, when that evil comes. *Decree affirmed.*