## W. W. SANDERS v. G. G. MILLER.

### Decided November 19, 1908.

**1.—Nuisance—Damages—Depreciation of Property.**

One who had constructed on his own premises a pond for collecting surface water in which no water had yet accumulated, could not be held liable to an adjacent proprietor for depreciation in the value of the latter's residence property on the theory that the pond was a permanent nuisance, which threatened, though it had not yet caused, an unwholesome accumulation of stagnant water, breeding mosquitoes and propagating malaria.

**2.—Same—Apprehension of Danger.**

Various definitions of nuisance considered, and held that depreciation of plaintiff's property by the use made by defendant of his own is not necessarily actionable; that there must be a substantial invasion of the legal rights of the owner; that the use was not actionable because of apprehended danger when it had not yet become a nuisance creating danger in fact.

**3.—Same—Permanent Injury—Abatable Nuisance.**

Use of property threatening future injury, but which will be abatable when it causes actual injury, discomfort, or inconvenience, can not be treated as a permanent nuisance giving rise to an action for diminution in the value of neighboring property. Cases of nuisance authorized to be created by public service corporations in the public interest distinguished, as to the right to abate, from those by strictly private proprietors.

**4.—Same.**

The right of abatement is not affected by the fact that affirmative action by the creator of the nuisance may be necessary to accomplish it; he may be compelled to perform such action.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*Smelser & Vaughan* and *M. L. Harkey,* for appellant.—The universal rule with reference to all nuisances is that they do not become actionable until they actually exist. Equity will relieve a party against a prospective nuisance where the danger therefrom is imminent, and where there is no question that the thing will be a nuisance; but a court of law will wait until the nuisance is actually created. Missouri, K. & T. Ry. Co. v. Dennis, 84 S. W., 860; Dunn v. City of Austin, 77 Texas,

139; Comminge & Geisler v. Stevenson, 76 Texas, 642; Wood on the Law of Nuisances, secs. 100, 835; Field on Damages, secs. 748, 749; Pinney v. Berry, 61 Mo., 359.

The court committed error in its charge to the jury in submitting as the measure of damages the cash market value of plaintiff's property just after the digging of the pool, because this is not the true measure of and submits a wrong test to the jury. Same authorities.

Before a judgment against a party for damages can be sustained on account of maintaining a nuisance the evidence must be reasonably sufficient to convince the ordinary mind that injury of some kind has been sustained by the other party. Same authorities; also Waterworks v. Kennedy, 70 Texas, 232.

The court committed error to this appellant's prejudice in its charge to the jury in submitting to them to find whether or not the pool was permanent, because the undisputed evidence showed that the pool could be closed up without trouble or delay and with trifling costs. Baugh v. Texas & N. O. Ry. Co., 80 Texas, 56; Hockaday v. Wortham, 22 Texas Civ. App., 419.

*Hart, Mahaffey & Thomas,* for appellee.—The object of this suit being to recover damages for the depreciation in value of plaintiff's property caused by the construction of the pool in close proximity thereto, it was not necessary for plaintiff to plead or prove actual personal injury to himself or his family prior to the institution of the suit or the trial of the case. It was only necessary for him to show the digging of the pool in such a manner as would constitute a permanent nuisance and depreciate the value of his property. Denison, etc., Ry. Co. v. O'Malley, 45 S. W., 227; Burditt v. Swenson, 17 Texas, 489; 21 Am. & Eng. Ency. Law (2d ed.), 687; Railway Co. v. Barry, 83 S. W., 6; 4 South., Dam. (3d ed.), secs. 1042-43; Rosenthal v. Railway Co., 79 Texas, 328.

The court gave to the jury the correct measure of damages, to wit, the difference between the cash market value of plaintiff's property just before and just after the digging of the pool. Denison, etc., Ry. Co. v. O'Malley, 45 S. W., 227; 21 Am. & Eng. Ency. Law (2d ed.), 726-7.

HODGES, ASSOCIATE JUSTICE.—The appellee filed this suit in the court below, seeking to recover the sum of $1,000 which he claimed as damages resulting from the depreciation in the value of his homestead by reason of the digging of a pool near it by the appellant. It appears from the testimony that the appellant, Sanders, owned a lot consisting of about six or eight acres on the opposite side of a street, in the town of DeKalb, from a lot owned by the appellee and upon which the latter resided. Sometime during the month of September, 1907, Sanders dug a pool upon his premises, making it about 30 feet by 60 or 70 feet, and the depth is variously estimated at from three to six feet. According to measurements the pool is within 42 feet of the residence of the appellee, but wholly upon the land of the appellant.

The case was tried before a jury and a verdict rendered in favor of the appellee, assessing his damages at $250, and judgment entered accordingly. In his charge to the jury the court instructed that the measure of damages, if any, would be the difference between the value of

the appellee's property before the construction of the pool and immediately afterwards. There are various assignments of error in the record, complaining both of the judgment of the court and of the charge presented on the measure of damages.

The testimony shows that suit was instituted after the pool was completed but before any water had collected in it. It also shows that at the time of the trial there had been some water collected in the pool, but it had disappeared either by evaporation or absorption, and the pool was then nothing more than a dry tank. In the lot, a short distance from the pool, was the barn of the appellant, where he kept his horses and cattle. There is no testimony as to how many horses or cattle were kept by him, or what condition the lot was in, further than that the space intervening between the barn and the pool was covered with Bermuda grass.

This suit was evidently instituted and tried upon the theory that the mere presence of the pool, or excavation in the ground, being calculated, in the course of time, to fill with water, was a permanent injury to the land of the appellee and authorized an action for damage before it attained an offensive condition. This was assuming that actionable damage to the realty existed before any of the personal discomforts or evil consequences, whose existence is relied upon to become the direct cause of the injury, arose. It is not contended that Sanders committed any trespass, or made any encroachments, upon the premises of Miller; neither does the evidence show that any stagnant water had collected in the pool, or that any of the evil results had arisen which would in the least affect the habitation of the appellee's premises. On the contrary, the actual existence of these discomforts is not fully alleged. That portion of the petition of the appellee wherein complaint is made of the presence of the pool is substantially as follows: That by the erection and maintenance of the pool the defendant had already caught and was holding therein a large body of surface water which drained off from his horse and cow lots and stables, and that he will continue to catch and hold therein a large body of surface water from said lots; that such water is, and will remain, stagnant and foul, will breed mosquitoes in large numbers, and is, and will be, dangerous to the health of the plaintiff's family; that the erection and maintenance of the pool is a permanent structure, and a permanent, dangerous and unsightly nuisance. Appellee alleges as his damages sustained by reason of the erection and maintenance of the pool that his property had been injured and impaired in its value in the sum of $1,000. There are no allegations of any personal ill results, discomforts or inconveniences having been sustained by the appellee or any member of his family; neither is it claimed that at that time the habitation of the premises was in the least interfered with or its comforts disturbed on account of anything resulting from the presence of the pool. It will readily be seen that no harmful consequences from the pool had then developed, but were in expectancy.

There were three physicians who testified for the appellee, as experts, concerning the probable results that might arise from the proximity of the pool to the appellee's premises. One of them gave it as his opinion that the construction of the pool would make the premises unwhole-

some; that a pool of stagnant water that near a residence would breed mosquitoes, and that the bite of the anopheles mosquito would produce malaria. He thought a pool of that character in that locality would be calculated to produce that kind of a mosquito. He also testified that such mosquitoes would breed plentifully in rain-barrels, overground cisterns, tin cans, and any other places where water was permitted to collect and become stagnant. The other two expert witnesses were less confident of the evil results likely to arise from the water collected in the pool. One of them stated that the climate around De Kalb was malarious; that the presence of the pool might have a tendency to make the place unwholesome; that the malarial mosquito would be likely to breed in a place like that, and that they would be likely to travel the distance from the pool to the house of the appellee. He also gave it as his opinion that the effect of the bite of the mosquito would be: "If he first bites an infected person—one with malaria—he could then transmit the disease to another by a bite, and the second person would be infected with the malarial germ." He also says that there would be no malaria unless the mosquito had also bitten somebody infected with malaria. According to the testimony of this witness, the bite of the mosquito which would likely be produced by the stagnant water collected in the pool, would be harmless unless there were infected persons in the community from whom he could first inoculate himself before embarking on his mission. The other witness stated that he had seen the pool but had not noticed whether there was any water in it or not. He thought the pool would be a disadvantage to Miller's place; that it might cause malaria. In other words, it might make it a sickly place—some sicklier than it would be if the pool were not there. It would cause persons living there to be subject to malaria, but he was not prepared to say that persons living there would be any more apt to have malaria after the construction of the pool than they would have been if the pool had not been there, but he thought they would. On cross-examination he stated that the mosquito bite was the cause of the malarial infection—that a mosquito inoculates the person it bites. His opinion was based upon medical authorities on the subject of the mosquito as the carrier of malarial germs. This is the testimony upon which the appellee founds his claim for damages for the depreciation in the value of his property.

In order to sustain the judgment rendered in this case there are two facts which must appear as having been established. First, that the mere construction of the pool constituted a nuisance before any of the injurious consequences or discomforts arose which the testimony showed were relied upon to directly cause the damage to the habitation of the appellee's premises. Second, that such a nuisance was of a permanent character, and not subject to be abated either summarily or by a judicial proceeding.

Mr. Cooley, in his work on Torts, volume 2, page 1174, adopts the common law definition given by Mr. Blackstone in his Commentaries, and thus explains an actionable nuisance: "Anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights." In Burditt v. Swenson, 17 Texas, 489, our Supreme Court discusses the definition of nuisance and adopts the following: "To consti-

tute a nuisance it is not necessary that the annoyance should be of a character to endanger health; it is sufficient if it occasions what is offensive to the senses and which renders the enjoyment of life and property uncomfortable. Even that which does but cause a well-founded apprehension of danger may be a nuisance." As an illustration of what may be termed "sufficient to cause a well-founded apprehension of danger," the court refers to the case of Cheatham v. Shearn, where it was held that a powder house located in a city, and containing stored therein large quantities of gunpowder, constituted a nuisance. In Joyce on Nuisances it is said: "The unauthorized or unreasonable use of, or the neglect of properly and reasonably using one's own property, to the detriment, hurt, annoyance, discomfort, injury or damage of another in his property or legal rights, or of the public, is a nuisance. A use made by one of his own property which works an irreparable injury to another's property, or which deprives his neighbor of the reasonable and comfortable enjoyment and use of his property, or which violates the unwritten but accepted law of decency, or which endangers or renders insecure the life and health of his neighbor, is a nuisance." Joyce on Law of Nuisances, section 11. Again, in section 19, the same author says: "It is difficult to define just what degree of injurious annoyance must be reached in order to warrant the court in determining what circumstances constitute a nuisance. A mere tendency to injury is not sufficient. There must be something actually appreciable which of itself arrests the attention, that rests not merely in theory, but strikes the common sense of the ordinary citizen. The determination, however, of the question rests in sound judgment and depends upon common sense in each case. So, in a New Jersey case, the court said: 'But the question remains, What degree of discomfort is necessary to constitute a nuisance? It is clear that everything that renders the air a little less pure, or is to any extent disagreeable, is not necessarily a nuisance. The word "uncomfortable" is not precise; in fact, no precise definition can be given. Each case must be judged by itself. If property can not be enjoyed unless the health is endangered thereby, a nuisance exists.'" The authority referred to to sustain the proposition announced in the last sentence is Campbell v. Seaman, a New York case, found in 20 Am. Rep., 567. That was an action to recover compensation for the damage and destruction of shade trees and other property by reason of offensive gasses and smoke emanating from a burning brick-kiln. It appears to be a well-considered case, and a large number of authorities are reviewed by the court in reaching a conclusion. In discussing the use which one person may make of his property regardless of its effect upon the rights of his neighbor, the court said: "But every person is bound to make a reasonable use of his property, so as to occasion no unnecessary damage or annoyance to his neighbor. If he makes an unreasonable, unwarrantable or unlawful use, so as to produce material annoyance, inconvenience, discomfort or hurt to his neighbor, he will be guilty of a nuisance to his neighbor, and the law will hold him responsible for the consequent damage. As to what is a reasonable use of one's own property can not be defined by any certain general rules, but must depend upon the circumstances of each case. A use of property in one locality and under some

circumstances may be lawful and reasonable, which, under other circumstances, would be unlawful, unreasonable and a nuisance. To constitute a nuisance the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable or inconvenient."

Admitting the location by Sanders of the pool in such close proximity to Miller's lot has operated to cause a depreciation in the value of the premises, that fact alone is not sufficient to give a cause of action for damages. It is not every injury to the property of another that creates actionable liability. Before such injury becomes the basis of a cause of action there must be a substantial invasion of, or interference with, the legal rights of the owner. There must be something more than merely making the premises unsightly or undesirable. Dunn v. City of Austin, 77 Texas, 139; Houston, E. & W. T. Ry. Co. v. Reasonover, 36 Texas Civ. App., 274; Van de Vere v. Kansas City, 17 S. W., 695; Truelock v. Merte, 34 N. W., 307; Westcott v. Middleton, 11 Atl., 490; Monk v. Packard, 36 Am. Rep., 315; McCann v. Strang, 72 N. W., 1117; Lewis on Eminent Domain, sec. 236; 2 Cooley on Torts, p. 1249; 4 Sutherland on Damages, sec. 1037.

In the case first above cited the court says: "Nor will the court interfere when the thing complained of is not in existence but may be called into existence by threatened acts of the defendant in the exercise of his lawful dominion over his property, and it is uncertain, dependent upon circumstances in the future whether it will or not operate injuriously."

The question presented in this case, then, is, Was the mere construction of the pool the creation of a nuisance? That it is not a nuisance per se, we think, admits of no controversy. Joyce on Nuisances, sections 305, 397, 398. That it is not now, or was not at the date of the trial, a nuisance, is equally true, unless it be said that it created a danger so imminent as to be a constant source of annoyance, such as arises from the proximity of a place where dangerous explosives are stored and where the conditions are such that serious results are liable to occur at any time. We do not think it can be contended in this case that the fear of sickness alone, unaccompanied by the presence of the conditions which would cause it, would be sufficiently well-grounded as to place the pool in the class of nuisances along with those above mentioned.

Both the pleadings and the evidence in this case show that the damage claimed to Miller's premises is due to the fact that in the future they will be unfit, or undesirable, for occupancy as a place of residence, by reason of the surrounding sanitary conditions being rendered unwholesome; that these unsanitary conditions have not yet occurred, but are practically certain to occur in the ordinary course of events. At the time of filing the suit and of the trial of the case no injurious results had actually been produced by the proximity of the pool, and it does not appear that there was any immediate danger of any at an early date. The entire claim for damage is predicated upon a condition which it is expected will arise sometime in the future. There was no stagnant water in the pool, no insect pests had been produced, and no legal rights which Miller possessed to the use of his premises had been interfered with. Therefore it could not be said that the pool was at the time of the trial

a nuisance in fact. If it was neither a nuisance per se, nor one in fact, it is difficult to find a basis for any damages found in Miller's favor. The damages, being dependent on the creation of unwholesome conditions exclusively, can not be said to have any legal existence until the offensive conditions appear. The digging of the pool by Sanders upon his own land, being in itself productive of no injurious results, was a lawful act, and he had the legal right to maintain it as a reservoir for the storage of water so long as its presence and use did not in some substantial way interfere with Miller, or some other person, in the use of his property. When that condition arose, and not till then, did actionable damages exist. The right of one owner to the free use and enjoyment of his property is as much the object of the State's protective care as is that of another not to be interfered with in the use and enjoyment of his. The evidence in this case failing to show that Miller had suffered any discomfort or inconvenience or annoyance by reason of the presence of the pool, we do not think there was any basis for damages. Rosenthal v. Taylor, B. & H. Ry. Co., 79 Texas, 328; Dunn v. City of Austin, 77 Texas, 139; 4 Waite on Actions and Defenses.

But suppose we admit that the pool was a nuisance, as constructed, and was liable in the course of time to fill with water and breed pestilential insects, such as mosquitoes, does it follow logically that the appellee has shown a present right to recover damages to his land? That depends entirely upon whether or not the nuisance was susceptible of abatement. If it is what is called a permanent nuisance, one not abatable by any of the means known to law, or had inflicted a permanent injury, then the damages which the petition alleges are recoverable. It is only when the injury to the realty is permanent, or the nuisance complained of is, from its nature, permanent, that the damages are to be measured by the depreciation in the market value of the realty affected. Rosenthal v. Taylor, B. & H. Ry. Co., 79 Texas, 328; Baugh v. Texas & N. O. Ry. Co., 80 Texas, 56; Houston Waterworks v. Kennedy, 70 Texas, 233; Denison, B. & N. O. Ry. Co. v. Barry, 98 Texas, 248; Ridley v. Seaboard & R. Ry. Co., 32 L. R. A., 708. But when the nuisance is subject to abatement a different rule obtains. Comminge v. Stevenson, 76 Texas, 642; Joyce on Nuisances, section 170. The right to abate a nuisance, either summarily by the party injured or in a judicial action, is a right of long standing, and one which has received full recognition in the courts, both in this country and in England. There are few instances, if any, in which a nuisance has been created by a private person, either in the use he makes of his own premises or property, or by unlawful acts in other places, where the right of abatement can not be exercised by those injured thereby, in one or the other methods recognized by law. 2 Cooley's Blackstone, page 1015; Learned v. Castle, 21 Pac., 11; 4 Waite on Actions and Defenses, 773; Jaggard on Torts, 803; 1 Cooley on Torts, page 57. The exceptions to the rule giving the right of abating a nuisance, either summarily or at law, are probably confined to those cases where the legal rights of the individual are subordinated to the superior right of the State to either directly or indirectly damage or destroy private property for a public use, or to authorize this to be done by some public utility corporation. The structures and conditions

produced by these public and quasi public agencies, which operate to damage private property in such a way as to constitute a nuisance if done by a private person for a private benefit, are in their nature not subject to abatement. The injuries they occasion must be compensated in damages and the injurious conditions permitted to remain. The permanent character of such enterprises authorizes the assumption that the injuries which they may inflict will also be permanent in most cases. This will, perhaps, in a great measure account for the apparent conflict in the rulings of some courts regarding the proper measure of damages for injuries resulting from the creation of a nuisance. A pool of stagnant water produced by a railway embankment might be regarded as a permanent nuisance,' while one created by excavations made by a private person for private use would not be so considered.

If the nuisance here complained of is an abatable one the plaintiff below would be entitled to recover only such actual damages as he had sustained up to the time of the trial, and not the depreciation in the market value of his property. Rosenthal v. Taylor, B. & H. Ry. Co., supra; Waite on Actions and Defenses, volume 4, page 776. The appellee not having alleged any damages except the depreciation in the value of his realty, the judgment in his favor can not be permitted to stand if we conclude that the pool, if a nuisance, is an abatable one.

An abatable nuisance may be regarded as one which is practically susceptible of being suppressed, or extinguished, or rendered harmless, and whose continued existence is not authorized under the law. It does not necessarily mean that in order to abate a nuisance the structure or thing which has caused the injurious results should be destroyed. It may be rendered harmless without resorting to such extremes. Green v. Lake, 54 Miss., 540, 28 Am. Rep., 378. In the case of a nuisance caused by stagnant water whose chief evil consists in affording a breeding place for mosquitoes, the occasional application of some known substance which would effectually prevent such results might be all that would be required to abate the nuisance, or the pool itself might be drained or refilled. The evidence shows that this can be done in this instance with only a few days' labor. We have no hesitancy in holding that in the case before us, if the pool should develop into a nuisance it is one which may be abated, and therefore the measure of damages submitted by the court was not the proper one. We are also of the opinion that the appellee, not having alleged or proven any actual injuries resulting from the presence of the pool, has not shown any actionable damages which would authorize a judgment in his favor.

It is immaterial, in so far as it affects the right to abate a nuisance, that some affirmative action is required on the part of the wrongdoer to accomplish that end. If he has erected a structure, or made an excavation, which has become a nuisance, he may be compelled to remove the one, or fill up the other, or do some affirmative act which will destroy the unlawful character which the structure or excavation may have assumed. State v. Goodnight, 70 Texas, 686; Galveston, H. & S. A. Ry. Co. v. Tait, 63 Texas, 223; Seguin v. Ireland, 58 Texas, 183; Williams v. Davidson, 43 Texas, 30; Revell v. People, 69 Am. St. Rep., 257, and notes; Nicholson v. Getchell, 96 Calif., 394; Van Bergen v. Van Bergen,

8 Am. Dec., 511; 1 High on Injunctions, sec. 804, and note 48; Jaggard on Torts, p. 802.

We think, for the reasons stated, that the judgment of the trial court was erroneous, and that the case should be reversed and a judgment here rendered in favor of the appellant. The case is accordingly reversed and rendered.

*Reversed and rendered.*