LOUIS HEILBRON ET AL. v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS.

Decided November 5, December 10, 1908.

**1.—Highway—Obstruction—Damages to Abutting Property.**

When the obstruction or destruction of a public highway causes special injury to a property owner beyond that which results to the public generally, such owner has a cause of action against the aggressor.

**2.—Highway—Dedication.**

Though a railway had acquired the title of only one of two joint owners to its right of way, the action of such owners in platting their land so as to show a street twenty feet wide along the right of way cannot be taken as a dedication by them of a portion of such right of way as a highway.

**3.—Highway—Prescription.**

Mere permissive use by the public for any length of time will not ripen into a right by prescription. A railroad being in itself a public highway, the mere use of a portion of its right of way by the public will not create a way by prescription thereon by which the company will lose the right to use its property for legitimate purposes connected with the operation of the road.

**4.—Same.**

Evidence considered and held insufficient to establish a right by prescription through the use by the public of a road along the right of way of a railroad which would prevent the company from destroying such road by excavations in the proper improvement of its track by deepening and widening a cut.

**5.—Railway—Damaging Private Property.**

The constitutional provision requiring compensation for damaging private property merely deprives corporations organized for public purposes of im-

munity, placing them on the same plane as private persons as to interference with the free use and enjoyment of their property by others and the production of physical inconvenience, discomfort or detriment.

**6.—Same—Unsightly Premises.**

A proprietor of property does not become liable for damages to that of another by rendering his own unsightly.

**7.—Same—Dangerous Premises.**

There can be no recovery for depreciation in the value of property by excavations on the premises of another which threaten, by caving away, to make dangerous the use of a street on which plaintiff's lots abut, where the danger may be avoided by the act of plaintiff, or defendant may be compelled to prevent it.

ON MOTION FOR REHEARING.

**8.—Same.**

The fact that an excavation adjoining a highway rendered the use of it dangerous would not be a basis for recovery of damages for depreciation in the value of premises abutting thereon unless the condition threatening danger was necessarily or probably permanent; though for injuries to an individual using the street in its dangerous condition the wrongdoer might be liable.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*Hart, Mahaffey & Thomas,* for appellants.—In cases of the character under consideration, a trial judge is not authorized to peremptorily charge the jury to return a verdict for the defendant, unless, upon giving full value to all the evidence introduced, the conclusion is irresistible that there can, under the law, be no recovery by the plaintiffs; and the conclusion must be of such certainty that it can truthfully be said that all reasonable men, hearing the testimony, and being advised of the law, would arrive at the same conclusion. Wallace v. Southern Cot. Oil Co., 91 Texas, 18; Gaunce v. Railway Co., 20 Texas Civ. App., 33; Bowman v. Brewing Co., 17 Texas Civ. App., 446.

When a public highway upon which property abuts has been damaged for public use this is such an injury as the Constitution protects the owner against. Railway Co. v. Downie, 82 Texas, 383; Chicago v. Taylor, 125 U. S., 658; Gray v. Railway Co., 13 Texas Civ. App., 158; Railway Co. v. Fuller, 63 Texas, 467; Limberger v. San Antonio R. T. St. Ry. Co., 27 S. W., 198.

To entitle them to recover in this action, it was not necessary for appellants to allege and prove that any part of their property had been actually taken or destroyed by appellee; they were entitled to recover upon showing that appellee, in making and maintaining the excavation as alleged, alongside and near their property, had destroyed or injured a public highway on which property owned by them abutted, and that they were entitled to use the highway as an incident to the use of their property, and that, on account of the injury or destruction of the highway, their property had been impaired in value. Railway Co. v. Hall, 78 Texas, 169; Limberger v. San Antonio R. T. St. Ry. Co., 27 S. W., 198; Chicago v. Taylor, 125 U. S., 658; Rosenthal v. Railway Co., 79 Texas, 325; Railway Co. v. Garrin, 29 S. W., 794.

In this State, a public highway may be created by prescription alone,

without any action of the public authorities, and, for the destruction or injury of such a highway, damages sustained by an abutting land owner to his property may be recovered. Hall v. City of Austin, 20 Texas Civ. App., 59; Railway v. Bandet, 21 Texas Civ. App., 240.

To prove that a traveled way has become a public highway by prescription, it is, of course, necessary to prove that the public, under claim of right to use the way as a public highway, have used it continuously as such for at least ten years; but it is not necessary to prove the claim of the public to so use the way by oral declarations. The claim of such right on behalf of the public may be established by circumstantial evidence, as, by the length of time the way has been used, the character of its use by the public, and the further fact that the way so used is defined either by natural or artificial boundaries. Hall v. City of Austin, 20 Texas Civ. App., 59.

The making and maintenance of an excavation in or so near a highway as to threaten its destruction and render travel thereon dangerous, is a nuisance. 15 Am. & Eng. Ency. Law, 500.

*Glass, Estes & King,* for appellees.—While the public may acquire a highway either by dedication or prescription, the methods of acquisition are entirely separate and distinct; and a party seeking to show that a road is a public highway acquired by either method can not allege one and prove the other. Evans v. Scott, 83 S. W., 874; 97 S. W., 117; International & G. N. Ry. Co. v. Cuneo, 108 S. W., 717.

Even if the petition had alleged that the road was a public highway acquired by prescription, the evidence was wholly insufficient to sustain such an allegation or to require that issue to be submitted to the jury. An easement if acquired by prescription is confined to the particular or specific ground used, and where the use is shifting and not confined to any particular or specific piece, no right is acquired by prescription. Hamilton County v. Garrett, 62 Texas, 609; Franklin County v. Brooks, 68 Texas, 679. The use of land as a road for a long number of years is not sufficient to show a dedication. Railway Co. v. Montgomery, 85 Texas, 64; Taylor, B. & H. Ry. Co. v. Warner, 88 Texas, 642.

Appellee having title and possession of its right of way may deepen the cut thereon for the purpose of reducing the grade and thereby improving the road in order to benefit it and the public generally, and the making of the excavation was therefore not unauthorized. On the contrary it was rightfully made and gives no cause of action to appellants, whose land was not touched. Railway Co. v. Shaw, 92 S. W., 30; Railway Co. v. Longino, 25 S. W., 1020; Railway Co. v. Meadows, 73 Texas, 32; 15 Am. & Eng. Enc. Law, 500.

HODGES, ASSOCIATE JUSTICE.—On the 12th day of June, 1907, the appellants, Louis Heilbron and M. C. Wade, began this suit in the District Court of Bowie County, seeking to recover of the appellee damages in the sum of $10,000, which, it is alleged, resulted from the deepening and widening of a cut in the appellee's right of way adjacent to their property.

The J. W. Johnson survey is a tract of land near the city of Tex-

arkana, and was originally patented to Mrs. Ball and Mrs. Estes, both of whom were married women at the time. Sometime thereafter, and during the year 1881, Mrs. Ball, joined by her husband, conveyed to the Texas & St. Louis Railway Company, for a recited consideration, a right of way 100 feet in width, running practically east and west through the Johnson survey. For some reason Mrs. Estes did not join in this deed, nor does it appear that she ever at any time thereafter conveyed any of her interest in the right of way. We think, however, the record will justify the conclusion that she acquiesced in the conveyance made by Mrs. Ball, and never at any time thereafter made any claim to any part of the railway right of way. The remainder of this survey was held in common by Mrs. Ball and Mrs. Estes till about the year 1891, when they made a partition of this property between themselves. In making the division the joint owners seem to have recognized the conveyance theretofore made by Mrs. Ball to the railway company, and the boundaries of the property which they divided among themselves were made without any conflict with the railway right of way. The deed made by Mrs. Ball conveying the right of way was duly recorded, and thereafter all of the taxes were regularly paid upon the property by the grantee and its successors. The Texas & St. Louis Railway Company constructed a narrow gage line upon the right of way soon after and about the time it was conveyed, and that line has been continually operated up to the present time. Sometime after its construction the gage was broadened, so that it is now what is called a standard gage road; and the appellee, the St. Louis Southwestern Railway Company of Texas, has succeeded to all of the rights and franchises of the railway company to which the land was originally conveyed by Mrs. Ball. In 1904 the appellants, for a valuable consideration, acquired title to a portion of the Johnson survey through Mrs. Estes, to whom that portion had been allotted in the partition before mentioned. The tract which they so acquired was located a few miles west of the city of Texarkana, on the north side of the appellee's right of way, at a point called Red Cut; this being on an elevation sloping from the north to the south, and where the railway entered a cut. This cut was variously estimated as being at that time from four to six feet deep at the deepest point. At the time of this purchase there was an old road that ran along on the north side of the appellee's right of way at Red Cut; some of the witnesses testified that it was partly or wholly on the right of way of the railway company at that point. After the purchase of this tract of land by the appellants, they laid it off into blocks and town lots, providing for streets and alleys in the usual way, and designated it the Red Cut Addition to the city of Texarkana. In platting the land the appellants laid off and dedicated as one of its streets or highways a strip of twenty feet in width on the south side of their tract and adjacent to the north line of the railway right of way and parallel therewith. This was called Britton Avenue. In June, 1905, the appellee railway company determined to lower the grade of its road-bed at that point; and for the purpose of carrying that into execution made considerable excavations on its right of way, both in the depth and the width of the cut. The testimony shows that after the work was completed the cut was about fifteen feet deep at

the deepest place, and that it had been widened on the north side until it was approximately from thirty-six to forty-two feet from the center of the track and was within from eight to twelve feet of the north boundary line of its right of way. The wall on the north side, after excavation, was left in a perpendicular condition. It is also shown that practically all of the old road which formerly ran along on the appellee's right of way, had been destroyed by the excavation. It is also shown by the evidence that this excavation was reasonable and necessary; that the grade of the railroad at that point was too high, and that the company determined to lower it; that it became necessary to widen the cut in order to lay a temporary track while the road-bed was being lowered, in order to prevent interference with travel. The appellants claim that the old road which ran along on the south side of their property, and which, together with the strip twenty feet wide, constituted Britton Avenue, was a public highway; and their recovery is based upon the depreciation in the value of their property occasioned by the destruction or serious interference with this highway. It is alleged by the appellants that the old road had long been dedicated to public use; that in making the excavations before mentioned the railway company had destroyed that road and rendered the use of Britton Avenue, or that portion which remained, dangerous, and that the cut, as it then existed, was a nuisance.

At the conclusion of the testimony the court instructed a verdict for the railway company; and from the judgment so entered this appeal is prosecuted.

The only assignment of error presented in the record complains of the peremptory instruction directing the verdict for the defendant. The owners of the property testified upon the trial that since the excavations made by the railway company at Red Cut the market value of their property has greatly depreciated, estimated at about one-third of its original value. In order, therefore, to sustain the judgment of the trial court, it is essential that the facts show this to be a case of damnum absque injuria.

As a basis for their right of recovery the appellants urge that the old road on the north side of the railway right of way was a public highway in which they, together with the general public, had an easement, and that its destruction seriously interfered with the travel to and from the addition which they had platted. They also claim that Britton Avenue, the strip which they had dedicated, was menaced and rendered unsafe by the proximity of the cut and the process of caving of the banks since the cut was made. It is contended by them that the evidence adduced upon the trial which tended to establish those facts, was of such weight that the issue made should have been submitted to the jury.

If the old road before mentioned had been dedicated to the public, as claimed by the appellants, and was a public highway in the sense that the public generally had an absolute right to have it kept open and free from obstructions, the testimony showing as it does that it had been practically destroyed by the railway, then it must be admitted that the appellants had a cause of action, because, we think, the testimony would support a finding that the property had been damaged by

reason of that fact. The issue, therefore, is, whether or not the railway company had the right to destroy the old road. Owners of property abutting upon a public highway have a vested right in the easement created by the existence of the highway; and when this highway is obstructed or destroyed and the obstruction or destruction causes a special injury to the property owner beyond that which results to the public generally, such owner has a cause of action against the aggressor. Dooley Block· v. Salt Lake Rapid Transit Co., 24 L. R. A., 610; Elliott on Roads and Streets, sec. 403.

There are various methods by which a public highway may be created or established. It may be by dedication by the owners of the fee; or it may be acquired by long use by the public, carried on in such a manner and persisted in for such a length of time as to give a right by prescription or limitation; or by being laid out and established by the municipal authorities in accordance with statutory provision. In this action the appellants have specifically alleged that the road had been *"dedicated"* to the public use; but in their argument they also insist that it became such by prescription. These two methods of acquiring an easement over the land of another are essentially different. Dedication is a setting apart by the owner for public use; while prescription is based upon a hostile use. Ramthun v. Halfman, 58 Texas, 551; Elliott on Roads and Streets, sec. 175. We have failed to find in the record any evidence of a dedication of this old road to public use.

Assuming that the deed from Mrs. Ball to the railway company had the effect of conveying only her undivided one-half interest in the strip of land designated, still it had the effect of vesting that interest in the railway company and of making it a tenant in common with Mrs. Estes as to that portion of the land. No one could complain of the railway company's entering upon and making exclusive use of this land, except Mrs. Estes. After that conveyance no valid dedication could have been made, even by Mrs. Estes, of any part of the land upon which this right of way was located, without the consent of the railway company. It does not appear that any such attempt upon ·her part was ever made. There was offered in evidence by the appellants a map or plat of the Johnson survey, made at the time of the partition between Mrs. Ball and Mrs. Estes, showing the various subdivisions into which the tract had been divided. This plat shows two parallel lines marked across it, which, though not designating what it is intended to represent, may be regarded as indicating the railway right of way. On each side of these marked lines is written "narrow gage street," showing that the owners intended that there should be a space for streets on each side of the railroad. There is nothing to indicate what width they intended those streets to be, nor is there anything to show that they intended to locate them upon the railroad right of way. In the absence of proof to the contrary, we think it may be safely assumed that if they intended to dedicate a strip of land on each side of the railway for public use, it was such land as they could lawfully dedicate, and hence was not upon the right of way. In order to constitute a dedication of private property for a public use it must clearly appear that the owner of the property intended to absolutely and irrevocably set apart the land for public use. Ramthun v. Halfman, 58

Texas, 551; Worthington v. Wade, 82 Texas, 28, and cases cited. The record fails to disclose any such evidence in this case; and we have therefore concluded that there was no evidence of the old road's having been dedicated to public use. .

Neither do we think there was sufficient evidence to warrant a finding that a right of way had been acquired by the public by prescription, as is insisted by appellants' counsel. The testimony tended to show that this old road was merely a neighborhood road; that it had never been worked as a public road, and no authority was exercised over it by the municipal government; that it had been there since about 1881; that it was traveled by any one who wanted to do so, and that no objection was ever made to its use. It is further shown that the railway property was not fenced at that point, but that on the north side of the railway right of way embankments of dirt had been thrown up, variously estimated at from four to six feet in height, when the original cut was excavated. How much travel passed over this old road is not known. There is nothing to indicate that it was more than a neighborhood passway and used as a matter of convenience merely by the inhabitants of that particular locality on the right of way of the railway, being used without objection by the public in a manner that did not interfere with its use by the railway company itself. The question then is, is this sufficient to sustain a finding that the public had acquired by prescription? We think not. It is a well established principle of law in this State that the permissive use of a road or way for any length of time does not ripen into the right. Ramthun v. Halfman, 58 Texas, 551; Worthington v. Wade, 82 Texas, 28; Gilder v. City of Brenham, 67 Texas, 346; Stewart v. Frink, 55 Am. Rep., 618; Jones on Easements, sec. 282; Elliott on Roads and Streets, sec. 130. In this instance we feel that the testimony was sufficient to show only that the road had been used by the acquiescence and permission of the railroad. To hold that the mere use by the public, without objection, of a portion of a railway right of way, and continued during the statutory period of limitation, or for twenty years, would cause the railway company to lose the use of its property which it may need for legitimate purposes connected with its operation, would cause unutterable confusion and bring about in this State a condition of affairs which would seriously interfere with railway traffic. A railroad is itself a public highway, constructed and operated for the public benefit, and some courts have gone so far as to hold that a right by prescription, or limitation, can not be acquired against a railroad to any portion of its right of way. Southern P. Ry. Co. v. Hyatt, 54 L. R. A., 522; Northern P. Ry. Co. v. Smith, 171 U. S., 260; Jones on Easements, sec. 281 and authorities cited in note. There are many portions of railway tracks and rights of way, especially around and near depots in cities and large towns, where the public use the right of way for passing to and fro continuously, and where such use has been kept up in some cases far beyond the period of time necessary to create an absolute easement; yet no court in this State has ever treated such persons, when injured while using the railway right of way, as more than licensees. To hold that they had the same rights there which they would have if they had acquired a right by prescription to the use of

the right of way, would be to enlarge the liability of railway companies beyond that which any court in this State—or in any other State, so far as we have been able to ascertain—has ever gone. If, then, the old road located upon the appellee's right of way was not a public highway which the railway company was precluded from disturbing, the company had a right to destroy it, especially if in doing so it was using its property in a lawful manner.

If we are correct in holding that the old road was not a public highway, in the sense that the public had an absolute right to its continued use, then there is but one other issue involved, and that is, were the excavations made by the railway company of such a character as to interfere with the free use and safety of Britton Avenue? We are not unmindful of the rule that private property can not for a public purpose be taken, damaged or destroyed, without compensation, and that this has been extended so as to protect the rights of an adjacent owner whose land is not actually invaded by railway companies from certain damages incident to the proximity of the railroad to his premises. Gainesville, H. & W. R. Co. v. Hall, 78 Texas, 172. It has been held that in the absence of some legislative or constitutional provision, similar to that which is incorporated in ours, corporations organized and acting for a public purpose, having legal authority to construct lines of railway, might be immune from liability for consequential damages inflicted upon private property. 4 Sutherland on Damages (3d ed.), sec. 1061. To place railways and other corporations exercising public or quasi public functions upon the same plane as to liability for such damages with private persons, was the purpose of our constitutional provisions prohibiting the taking, damaging or destroying private property for a public purpose without compensation. Since the adoption of that provision railways and other such corporations stand in the same attitude as to liability with private persons. Gainesville, etc., Ry. Co. v. Hall, supra; Jordan v. Benwood, 36 L. R. A., 519. We understand the rule to be that in order to constitute a damaging of private property, within the meaning of our constitutional provision, there need not be actual invasion, but there must be an interference with its free use and enjoyment, the production of some physical inconveniences, discomfort or detriment. Aldrich v. Metropolitan West Side Ry., 57 L. R. A., 237; 15 Cyc., 656, and cases cited in note 16. One of the appellants, testifying in answer to the question as to how his property had been injured by the deepening and widening of the cut, stated that it was unsightly and dangerous. We do not think it will be seriously contended that the unsightly appearance of adjacent premises can give the property owner any right of recovery. Whatever the appellants' property may have derived in point of value by reason of the beauty of the scenery, or the attractiveness of the surroundings occasioned by the condition of the appellee's property, was not derived legitimately from the use of their own, but, to that extent, from the use of the adjacent property. One property owner is not bound to keep his premises attractive for the delectation of his neighbor, nor is he compelled to refrain from making them unattractive lest he might offend his neighbor's esthetic sense. So long as his use of the premises does not interfere with the use by his neighbor of the latter's own premises, there

can be no actionable damage. In his testimony the above mentioned witness did not state in what respect the excavation was dangerous; he did not say it rendered travel along Britton Avenue dangerous; and it may be that he considered it dangerous to one only who went upon the appellee's premises. There were quite a number of witnesses who testified for the appellants upon the trial, and none of them gave it as their opinion or stated facts which would justify us in reaching the conclusion that Britton Avenue was dangerous for those who traveled it. It is true one or two of the witnesses stated that the road was not now being traveled, but they gave as a reason that the water had been turned into a ditch running across the avenue and this ditch had so washed that vehicles could not pass over it. In the absence of testimony showing that Britton Avenue had been rendered unsafe for travel, and in that way ingress and egress to and from the property of the appellants had been interfered with, we do not think there is any well grounded basis for damages, even though the property had depreciated in value by reason of the proximity of the cut. If the evidence had been sufficient to sustain a finding upon the trial, that these excavations had substantialy interfered with travel upon Britton Avenue, or had rendered it dangerous and in that way had affected injuriously the value of appellants' property, it would have been error to instruct a verdict for the appellee. We have concluded, therefore, that the judgment should be in all things affirmed.

## ON MOTION FOR REHEARING.

In their argument on motion for rehearing counsel for appellants contended that whether or not the excavations made by the railway company were such as to render travel upon Britton Avenue dangerous, was a material issue in the case; and that if the evidence tended to establish that fact and was of sufficient probative force to sustain a finding thereon, it should have been submitted to the jury. That conclusion is probably a fair inference from the language we used in the original opinion; and if so, it was misleading. We do not think that even if it be conceded that Britton Avenue was rendered unsafe for travel, it would logically follow that appellants were entitled to recover damages under their pleadings in this case. Britton Avenue was a public highway, upon which some of the appellants' property abutted. The only right which appellants had in that highway, for the deprivation of which they would have a cause of action, was the right to its use as a means of ingress and egress to and from their property adjacent thereto. It is a well established rule of law that for the destruction or obstruction of a public highway a private party can not maintain an action for damages unless he alleges and proves that he has sustained some special injury thereby which is different in kind and degree from that which results to the public at large. 2 Cooley on Torts, 1292-1294; Jones on Easements, par. 543. In this suit the special injuries relied upon consist in the permanent injury to the freehold, the depreciation in the market value of the realty. This is the only injury alleged or proven. It therefore follows that unless the condition and proximity of the excavation not only interfere with the

legitimate travel upon the avenue to such an extent as to interrupt its free use, but that the conditions by which this is produced are permanent and not subject to be remedied, then there was no evidence which could have been made the basis for a recovery of the damages sought. It is only when the injury is permanent, or the nuisance complained of is from its nature permanent that the damages are to be measured by the depreciation in the market value of the realty affected. Rosenthal v. Taylor, B. & H. Ry. Co., 79 Texas, 328; Sanders v. Miller, 113 S. W., 996, recently decided by this court; Beatrice Gas Co. v. Thomas, 41 Neb., 662, 43 Am. St. Rep., 711.

In the case last above cited the court said: "The inquiry should have been as to whether or not the defendants had caused a permanent and irremediable injury to plaintiff's property; if so, he was entitled to compensation in this action for all injury, present or prospective. If, on the other hand, the injury was temporary in its character, and capable of being avoided in the future without permanent injury to the plaintiff's freehold, the case was one of a continuing nuisance, and damages should have been restricted to the commencement of the action." In those cases where the depreciation in the market value of the realty is made the basis of measuring the damages, a recovery is permitted for prospective, as well as permanent, injuries. This is justified solely upon the theory that, so far at least as the complaint is concerned, the conditions which have caused the injury are lasting and irremediable.

Applying that rule of law to the facts here involved, it will be seen that it is not enough to warrant a recovery in this case that it be shown that Britton Avenue is menaced by a dangerous nuisance, but it must further appear that this situation is necessarily or in all probability permanent. Here we must distinguish between the cut, or excavation, as a fixture, and the danger arising from its proximity to the highway in an unguarded condition. While the railway company had the right to make the excavation in the manner it did, because it was upon its own land, yet if in doing so it has approached so near Britton Avenue as to render travel thereon dangerous it would be guilty of negligence, not necessarily in making the excavation, but in not restoring the highway to a safe condition by sufficiently guarding travelers against the precipice. It will not be contended that the maintenance of this excavation in an unguarded condition was essential to the power and legitimate use of its property by the railway company. If the highway bordering thereon is rendered unsafe for travel we see no reason why the company at the instance of the proper parties, those receiving special injury, may not be compelled to restore it to a safe condition. The facts in evidence in this case, if found sufficient to show an interference with travel on Britton Avenue, present a situation which can be remedied, or a nuisance that may be abated. Sanders v. Miller, 113 S. W., 996, recently decided by this court, and cases cited. For those reasons no damages are recoverable for prospective injuries, such as are necessarily implied when the depreciation in the market value of the realty is made the basis; and in this case, no other special injuries having been alleged or proven, there was no issue upon which a jury would have been authorized to pass.

We need no better illustration of an injustice made possible by erroneously adopting the depreciation of the realty as a measure of damages in this class of cases, than is here presented. If the precipice caused by the railway excavation is a menace to travel upon Britton Avenue, so grave as to practically amount to an obstruction of that highway, the undisputed facts show that this condition may be remedied, either by the appellants or other interested parties constructing a fence or a sufficient guard along the south line of the Avenue, between it and the excavation, or by compelling the railway company to erect and maintain a sufficient guard. This might be done as well after appellants had obtained a judgment for permanent injury to their realty, as before. They would not be compelled to remain idle and permit the obstruction to continue merely because they had recovered such a judgment for future damages. Thus we would have damages awarded for injuries that never accrue.

There is no evidence going to show that travel on Britton Avenue had ceased or had been lessened by the presence of the excavation. One of the appellants' witnesses testified that it was impassable by reason of the ditch or drain caused by some of the property owners concentrating the flow of water across the avenue toward the cut.

We do not think there is any good reason for changing our former holding, and the motion for rehearing is therefore overruled.

*Affirmed.*

Writ of error refused.