The Chicago, Burlington and Quincy Railroad Co.

*v.*

William W. Hammond.

*Opinion filed June 23, 1904.*

1. RAILROADS—*clear proof is required to establish prescriptive right to passageway under trestle.*  To establish a prescriptive right to a passageway for stock through a ravine under a railroad bridge all the elements necessary to the existence of such right must be clearly proven.

2. SAME—*building of trestle bridge raises no implication that it was intended to let stock under.*  The building of a trestle bridge over a ravine or water-course crossed by a railroad right of way raises no implication of law that the bridge was so built in order to permit the passage of stock thereunder.

3. SAME—*what not sufficient notice to company of adverse claim.*  A declaration by the owner of a farm to a section foreman that he claimed a right of passageway under a trestle bridge for his stock is not of itself notice to the company of such claim.

4. SAME—*what is not an assertion of a claim of right.*  Placing gates or temporary fences across the spans of a trestle bridge to prevent stock from passing from one field to another at will is not an assertion of a claim of right on the part of the owner of the farm to use the passageway under the trestle for stock.

5. PRINCIPAL AND AGENT—*what essential to make notice to agent notice to principal.*  To make notice to an agent notice to his principal the nature of the agency must be such that the law will presume that the agent communicated the notice to his principal or it must be established as a fact that he did so.

Appeal from the Circuit Court of Fulton county; the Hon. G. W. Thompson, Judge, presiding.

Sweeney & Walker, and H. M. Waggoner, (Chester M. Dawes, of counsel,) for appellant.

Lucien Gray, for appellee.

Mr. Chief Justice Ricks delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Fulton county, Illinois, finding that appellee had an easement of passageway under a certain culvert or railroad bridge of appellant.

Appellee is and for many years has been the owner of the north-east quarter of section 31, town 5, north, range 1, east, in Fulton county, which is traversed from the south-east corner, in a north-westerly direction, to near the north-west corner, by the right of way of the appellant railroad. The track was constructed there about the year 1869, appellee then being the owner of the tract of land. The right of way intersected two depressions or ravines, one near the south-east corner of appellee's land and the other about six hundred feet distant, to the north-west, therefrom, each having its source in the western portion of appellee's land and forming a junction about six hundred to eight hundred feet from appellant's road. In the construction, railroad bridges were provided to carry the track of the railroad over these depressions and leave a water-way through them. The northerly bridge was originally No. 68, was eighty-two feet long, had six spans or stringers and seven bents, with an extreme height of twenty-one feet, the depression over which it was built being in the nature of a gradual slope. The bridge in question was numbered 67 originally, and latterly 146A. This bridge contained three spans, and was about fifty feet long and nineteen feet

high at the deepest point. At this bridge the depression was much more pronounced and the banks more steep. The middle span originally covered a ditch or ravine made by the wash of the waters, and from the bottom of the ravine to the top of the track was nineteen feet. From the time the bridges were built to 1886 appellee used both of these depressions under the bridges as a passageway for his stock. The weight of the evidence shows that the north-westerly bridge was, up to that time, mostly used, as the crossing was more easily made through it, and up to that time appellee had that portion of the land in pasture. In 1886 appellant filled under the most northerly bridge, No. 68, with dirt, leaving a tile opening for the passage of the water, so that the same became a solid embankment. The evidence shows that at that time appellee protested against the filling under the westerly bridge and insisted that he had a right of passageway under it. He asserted that he had a written agreement giving him the right of passageway under that bridge and that the same was of record. This assertion he made to the superintendent of bridge construction, Thorn, and C. H. and Z. H. Sexton, who were bridge foremen. At this time appellee asserted no right to a passageway under the east bridge. When the alleged written agreement was demanded appellee could not produce it, and the records of the county were searched but failed to disclose the same. Appellee has abandoned the claim that he had a written agreement, and now says that the agreement was verbal, and was with one Barnes, who was the attorney for the company that originally owned and constructed the road. He claims that the verbal agreement was made about the time the road was constructed, and was, in substance, that if he would release or deed to the company the right of way without condemnation he should have a passageway under the track. The evidence discloses that in 1872, after the road was built and in operation, appellee conveyed, by deed, to

appellant's predecessor in title the right of way one hundred feet in width through his land for an expressed consideration of $375, and expressly covenanted that the same was free from all encumbrances. The Statute of Frauds was pleaded, so that, so far as the claim of a right of way by contract is concerned, appellee is estopped by his deed to rely upon the alleged contract, which was made prior to the making of the deed, and whatever right he has is a prescriptive right, depending wholly upon the adverse user. It further appears from appellee's testimony that the first formal claim or assertion of the right of passageway at the point now in question made by appellee to appellant or its grantor was in 1891. At that time appellant arranged to place in the water-way under the bridge in question a sewer pipe, three and a half to four feet in diameter, for the carrying of the water through the embankment, and proposed to fill the two easterly spans of the bridge. When the sewer pipe was delivered at the bridge, appellee wrote appellant objecting to the placing of the sewer pipe under the bridge, and asserting that he had the right of passageway under said bridge for his stock. Appellant's superintendent of bridges visited appellee after this letter, and advised him that they would fill up the two easterly spans of the bridge and leave the other, or most north-westerly span, open, as appellee claims. The agreement to leave the west span open is denied by appellant's superintendent of bridges who had the conversation with appellee. At the time the sewer pipe was put in under the bridge in question the westerly span was so low, the ground rising so rapidly toward the bridge, that it was apparent it could not be used by stock in passing through. The evidence, however, shows that the sewer pipe, after a delay of a year or two, was put in and the middle span and the south-easterly span were filled with dirt, and that the westerly span was, either by those who did the filling or by appellee, opened up so that appellee's stock could

pass through. The opening, as described by the evidence, was thirteen feet wide, five feet high on the side and sloped to a depth of six feet in the middle, in the clear. Appellant's witnesses deny that the workmen who put in the sewer pipe and filled in the two easterly spans were given authority or direction to open the north-westerly span for the passage of stock. It was done, however, and was used by appellee until shortly before the time of the bringing of this suit, when appellee ascertained that appellant was going to fill up the said last opening and have a solid embankment, leaving only the sewer pipe for the passage of the water.

There is evidence, we think, fairly showing that from the time the bridge was first constructed to the time of the bringing of the suit appellee's stock did pass through and under this bridge. The passageway was not continuously kept open or continuously used, but during such time as appellee had pasture on both sides of the railroad track his stock did pass through this bridge from one part of the pasture to the other. The evidence does show that appellee asserted to various members of his family and to his neighbors and to certain section men, during the long period that intervened from the construction of the road to the time of filing the bill, that he had a right of passageway under this bridge, but there is no evidence showing or tending to show that he made such claim to the company at that time, and, in fact, appellee himself states that the first time that he formally notified the present railroad company, or any of its predecessors in title, of his alleged claim of right as to this bridge, was in his letter of 1891.

The passageway that the stock had from the time the sewer pipe was placed under the bridge in question and the two spans filled with dirt was not the passageway that the stock had used from the time of the construction of the road to 1891, as the evidence quite clearly shows that the passageway up to that time was under

the middle span of the bridge. There is, however, some controversy about this proposition, and it is contended that the westerly bent of the middle span of the bridge was moved farther east, and that some of the way that was traversed by the stock in passing through prior to the filling under the bridge was left in the opening after the two spans were filled. It is entirely clear that so far as concerns the right of passageway by user or prescription at the particular opening that was filled pending this suit and for the prevention of which the suit was brought, appellee did not and could not acquire any such prescriptive right, as the time was little more than ten years.

The place where stock passed under the center span of this bridge for the many years prior to 1891, and upon which the prescriptive right is predicated, contained, during most of the time, a decided ditch or ravine, with sharp banks and a considerable depression, and during freshets carried water to the depth of four or five feet, and in dry times would frequently and for periods be entirely dry. When there was water in the ravine the stock would travel along the banks or edge of the ditch or waterway, and when it was dry pass through the ditch itself. The evidence also discloses that from the time the road was first constructed there was continuously kept a regular farm crossing at grade with the railroad and a little north-westerly of bridge No. 68, which appellee used for hauling and teaming and such other farm purposes as farm crossings are usually required. It is not contended that appellee ever used this opening, or any opening under the bridge in question, for any other purposes than the passage of his live stock through it from one pasture to the other or from two parts of a common pasture, or, as the evidence tends to show, at times when one part was converted into feed-lots and the other part kept in pasture.

Under the evidence, as we view it, there was no such adverse possession of the right of way here claimed as could or ought establish a prescriptive right. Appellant and its grantors were in the continuous and open use of the railroad for all railroad purposes. Its possession was as exclusive as the requirements of its business, under the conditions existing, required. At the time the road was constructed, wooden bridges and trestles obtained upon all the roads of this State and sewer-pipe openings for water-ways were not in use. It is a matter of common knowledge that for the water-ways trestles were practically the only thing used by railroads, and the evidence abundantly shows that at such openings for the passage of water, fences obstructed the flow of water and gathered debris and endangered the trestles and road-bed. In order that a prescriptive right for passageway for stock through a water-course under a railroad bridge should be found by a court to exist, all the elements that go to establish such a right should be clearly and distinctly proven. When the road was constructed and the trestle left open along this ravine, in the manner shown, it cannot be successfully contended, under this evidence, that it was done with the view of leaving a passageway for appellee's stock. It is true, a man of ordinary observation would know that if stock were kept along the railway in a field or pasture it might pass through or under such bridge, but from that no implication of law would arise that it was left for the purpose of a passageway, and the evidence in this case clearly contradicts such theory as that, and though appellant's agent may have known that stock was passing through and under this bridge, there was no presumption of law or of fact that it was doing so under or by virtue of any claim of right on the part of appellee that was hostile to the rights of property and absolute dominion on the part of appellant over its railroad and said bridge. Notice to

a section foreman or a declaration to a section foreman by appellee that he had a right of passageway cannot, we think, be held to be notice to appellant of appellee's claim of right. There is not the slightest evidence in this record showing or tending to show that the section foreman or any of the section men were charged with the duty of notifying appellant of any such assertion or claim of right, or that they had authority to consent to or deny that appellee had such a right. The law seems to be well settled that when notice to an agent is relied upon, the nature of the agency must be such that the law will presume that the agent carried the notice to his principal, or it must be established as a fact that the agent did communicate to his principal such notice and claim. Nothing of the kind appears in this record.

While the facts in this case slightly vary from the facts in the cases of *Chicago, Burlington and Quincy Railroad Co.* v. *Ives*, 202 Ill. 69, and *Chicago, Burlington and Quincy Railroad Co.* v. *Johnson*, 205 id. 598, the principles of law stated in those cases are, as we think, entirely applicable to the case at bar. We think there is nothing in the case at bar that makes it an exception to the rules announced in those cases. The fact that at times appellee placed temporary fences or gates from span to span of this bridge, so that his stock might not stray from one side of the road to the other unless he chose to have it do so, was not, as we think, the assertion of any right of dominion over the property. Those obstructions were placed and taken away as suited appellee's convenience, and were not of a permanent character at any time. It is shown that a gate was placed at this opening by driving down stakes and slipping a sliding gate between them.

Railroads are public agencies, in a sense, and are charged with public duties. They are given the right of eminent domain upon this theory. The evidence establishes, and the fact is well known, that those wooden trestles were a menace to the safety of the traveling

public because of fires and washouts, and while when the building of railroads was in its early stages this class of openings was in common use, these public agencies should be permitted and encouraged by the courts to bring their road-beds up to the highest standard of safety, and private rights should only be suffered to interfere with the performance of that duty, when they are established according to the requirements of the law. As the place now is, there is a tile three and one-half to four feet in diameter, through which hogs and sheep and smaller animals may pass if there are no bars or screens at the openings. If appellee's smaller stock shall for an unlimited period use this sewer pipe as a passage from one part of the field to the other, can it be said that appellee would thereby acquire a right of passageway for his stock? The only difference is, that the opening contended for and the one now existing are different in size. Each was originally to subserve the same purpose, and appellant had the same use of its railroad, and every part of it, prior to the filling that it will have afterwards. To hold, in this class of cases, that such use of an opening under a bridge would create an easement of passageway would, as we think, be carrying the rule beyond reason.

The evidence was insufficient to justify the findings that appellee had obtained an easement, by adverse user under claim of right, to use the same. A rehearing was granted in this cause at the former term, and after a full consideration we adhere to the conclusion formerly reached.

The decree will be reversed and the cause will be remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*