(Nos. 13087, 13088, 13089.—Judgments reversed.)

THE UNITED DISPOSAL AND RECOVERY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (MYRTLE M. TAYLOR, Admx. Defendant in Error.) THE UNITED ENGINEERING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(BERNICE PEACOCK, Admx. Defendant in Error.) THE UNITED ENGINEERING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ESTHER CRAMER, Admx. Defendant in Error.)

*Opinion filed February 18, 1920.*

1. CORPORATIONS—*when a corporation is bound by notice to its agent.* To bind a corporation by notice to its agent the nature of the agency must be such that the law will presume that the agent carried the notice to his principal or it must be established as a fact that the agent did communicate the notice to his principal.

2. PRINCIPAL AND AGENT—*when notice to an agent is notice to principal.* For notice to or knowledge of an agent to be binding on his principal the knowledge must be acquired while the agent is acting within the scope of his authority and must be in reference to a matter over which his authority extends.

3. WORKMEN'S COMPENSATION—*injury must arise out of and in the course of employment.* The Compensation act should receive a liberal construction so that its beneficent purpose may be reasonably accomplished, but its provisions cannot be extended to cover injuries which do not occur in the course of and arise out of the employment, and to sustain an award both of these conditions must be present.

4. SAME—*when injury arises out of employment.* The words "arise out of" have reference to the cause or origin of the accident, and for an injury to arise out of the employment it must be an accident resulting from a risk reasonably incidental to the employment or which might have been contemplated by a reasonable person as incidental to it when entering the employment.

5. SAME—*when a risk is incidental to the employment.* A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.

6. SAME—*risk incurred by an employee as a volunteer is not incidental to employment.* Where an employee engages in a vol-

untary act not accepted by or known to his employer and outside the duties for which he is employed, or chooses to go to a dangerous place where his employment does not necessarily carry him, his act is not incidental to his employment.

7. SAME—*when injury to employees while going to their work does not arise out of employment.* Where a company engaged in construction work on a farm, voluntarily, and not as a part of the contract of hire, arranges to carry its employees from a certain point in a city to the place of employment with its own trucks and drivers, employees who without notice to their employer arrange with one of the truck drivers to haul them direct from their homes in another town to their work act outside of their employment when taking the unauthorized route, and the employer is not liable for their death or that of the driver when the truck is struck by a train.

WRITS OF ERROR to the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding.

FISHER, BOYDEN, KALES & BELL, and CHARLES W. FERGUSON, (J. F. DAMMANN, JR., of counsel,) for plaintiffs in error.

REYNOLDS & RECKHOW, (E. D. REYNOLDS, of counsel,) for defendants in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiffs in error, the United Disposal and Recovery Company and the United Engineering Company, are closely allied and many of the stockholders and officers of the one are stockholders and officers of the other, but the two corporations are distinct and their work is kept separate. The United Disposal and Recovery Company is a Maine corporation organized for the purpose of operating plants for handling garbage and other waste materials of municipalities and army camps. It maintained a branch at Camp Grant, near Rockford, Illinois. The Rockford operation consisted of an incinerator plant at Camp Grant, where waste paper was baled and shipped and where garbage was

291 — 31

collected and sent by trucks to a hog farm three and a half miles south and east of the camp. The United Engineering Company is an Illinois corporation organized for the purpose of constructing disposal plants and incinerators for municipalities and others. In the fall of 1917 it was building a degreasing plant at said farm for the United Disposal and Recovery Company. Thomas J. Lee was then treasurer and general manager of both companies, Joseph Hall was superintendent of the Rockford operation of the United Disposal and Recovery Company, and E. P. Brady was superintendent of the Rockford operation of the United Engineering Company. Glenn M. Taylor was employed by the United Disposal and Recovery Company as a truck driver, and Arthur Peacock and Earl Cramer were employed by the United Engineering Company in the construction work at the farm. Camp Grant is located about six miles south of Rockford. Men employed at the camp could reach it from Rockford by means of steam railroad, electric railroad or automobile. Because of the great number of men so employed, facilities were entirely inadequate to convey them from Rockford to their work. For the convenience of the employees of plaintiffs in error, arrangements were made for them to ride back and forth between Rockford and the incinerator plant and the farm on the trucks of the disposal company. These trucks were kept in Rockford, and it was understood that they would leave from certain points in Rockford at six o'clock each morning, and those employees of the companies who desired to avail themselves of the opportunity to ride on these trucks were told to be at the designated points when the trucks left. Taylor lived in Rockford and for a long time hauled some of the employees in accordance with this arrangement. Peacock and Cramer lived in Cherry Valley, a village eight miles east of Rockford. Their custom was to come to Rockford on the interurban railroad in time to make connections with one of the trucks. About November 18, 1917, because of the

illness of his mother-in-law, Taylor and his wife went to Cherry Valley to stay at the home of his father-in-law, so that his wife might keep house for her father until her mother recovered. By an arrangement with Peacock and Cramer, Taylor kept the truck at Cherry Valley, and instead of driving through Rockford and thence to the camp and the farm, Taylor drove southwest from Cherry Valley through Perryville, a little station east of Rockford, on the Illinois Central railroad, to the farm and thence west and north to Camp Grant. From Cherry Valley to the farm was about eight and a half miles. A few minutes after seven o'clock on Monday morning, November 26, 1917, the truck was struck by an east-bound Illinois Central train at the Perryville crossing, and Taylor, Peacock and Cramer were killed. Compensation was awarded in each of the three cases, and on review by the circuit court of Winnebago county the findings of the Industrial Commission were approved. By leave of this court writs of error were prosecuted to review the judgments of that court, and the causes have been consolidated for consideration here.

The only question presented for our consideration is whether or not the injuries resulting in the deaths occurred in the course of and arose out of the employment of the parties killed. It is contended by plaintiffs in error that the route taken by deceased was unauthorized and that the dangers encountered on that route were risks not anticipated or assumed by the employers. The orders of Lee, general manager of the disposal company, Hall, superintendent of its Rockford operation, and George Winquist, foreman of its truck drivers, were that the trucks should be kept at Rockford and from there driven to the incinerator plant at Camp Grant. This arrangement was made not only for the purpose of having a safe place at which to care for the trucks, but for the purpose of hauling the employees, freight, express and whatever was to be hauled from Rockford to the companies' plants. None of these men had any

knowledge of the keeping of the truck at Cherry Valley and of the driving of the truck from Cherry Valley through Perryville to the farm and the camp. It is earnestly contended by defendants in error that William M. Franks, who by accident learned of this deviation from the directions of the disposal company, was in authority, and that his knowledge and acquiescence in this arrangement bound the company. Franks was employed by the disposal company as timekeeper and shipping clerk, and as such had charge of the loading platform at the incinerator plant at Camp Grant and of the time-books and other records at the plant. He had no authority over any part of the operations of plaintiffs in error not connected with this loading platform. He kept account of the waste paper that was baled and when a car-load had accumulated billed it out. He kept account of the time of the employees of the company and under Hall's directions employed and discharged men. He made out the pay-roll, filled out the checks for the wages of the employees but did not sign them. The only information he had regarding the route taken by deceased was such information as he received from Taylor about three days before the accident. He requested Taylor to haul some freight from Rockford, and Taylor advised him that he could not do it because he was then keeping the truck at Cherry Valley and was no longer going through Rockford, and explained that Peacock and Cramer preferred to pay the garage rent at Cherry Valley and thereby secure a ride from Cherry Valley to the farm, which saved them considerable time and their fare on the interurban from Cherry Valley to Rockford. Franks says that he replied that he saw no objection to this arrangement and that it was all right as far as he was concerned. Although Franks had made application for the position of local manager he was never employed as such, and an examination of all his testimony shows that he does not claim to have had charge of the operations of plaintiffs in error beyond keeping the

records and looking after the shipments from the shipping platform. He styles his position "chief clerk."

The law is well settled that when notice to an agent is relied upon to bind a corporation the nature of the agency must be such that the law will presume that the agent carried the notice to his principal, or it must be established as a fact that the agent did communicate to his principal such notice. (*Chicago, Burlington and Quincy Railroad Co.* v. *Hammond*, 210 Ill. 187.) Notice to or knowledge of an agent while acting within the scope of his authority and in reference to a matter over which his authority extends is notice to or knowledge of the principal, but in order to be binding upon the principal the knowledge must be acquired while the agent is acting within the scope of his authority and in reference to a matter over which his authority extends. (4 Fletcher's Cyc. Corp. 2214.) The information imparted by Taylor to Franks did not bind the plaintiffs in error.

The Workmen's Compensation act should receive a liberal construction, so that its beneficent intent and purpose may be reasonably accomplished. Its provisions, however, cannot be extended to cover injuries which do not occur in the course of and arise out of the employment. It is not sufficient that the injury occurs in the course of the employment; it must also arise out of the employment. The words "arising out of" have reference to the cause or origin of the accident and seem to indicate that the accident must happen out of the transaction of the business in which the workman is engaged. (Boyd on Workmen's Comp. 472; Harper on Workmen's Comp. 31.) It must be an accident resulting from a risk reasonably incidental to the employment. An accident arises out of the employment when it is something the risk of which might have been contemplated by a reasonable person when entering the employment as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman

has to do in fulfilling his contract of service. (*Dietzen Co.* v. *Industrial Board,* 279 Ill. 11; *International Harvester Co.* v. *Industrial Board,* 282 id. 489.) Where an employee engaged in a voluntary act not accepted by or known to his employer and outside the duties for which he is employed is injured it cannot be said that his injury arose out of his employment. (*Central Garage* v. *Industrial Com.* 286 Ill. 291.) Where an employee chooses to go to a dangerous place where his employment does not necessarily carry him and where he incurs a danger of his own choosing and one altogether outside any reasonable exercise of his employment it cannot be said that his act was an incident to his employment. (*Nelson Construction Co.* v. *Industrial Com.* 286 Ill. 632.) Taylor was instructed to keep the truck in Rockford and had no authority to keep it in Cherry Valley. When he disobeyed instructions and chose to select a route that better suited his convenience he was acting *outside his employment,* and the injury which he received and which resulted in his death did not arise out of his employment. Peacock and Cramer were not killed in the course of their employment nor did their death arise out of their employment. There was no agreement by either of plaintiffs in error to furnish them transportation from Cherry Valley to the farm. Without the knowledge of plaintiffs in error they arranged with Taylor to haul them over the Perryville route, and they must be held to have assumed the consequences of their own act. While arrangements had been made for them to ride on the trucks from Rockford to the farm, it was no part of the contract of hire that they would be furnished transportation from their homes to the place of their employment.

The judgment of the circuit court of Winnebago county in each of these causes of action is reversed and the decision of the Industrial Commission in each case is set aside.

*Judgments reversed.*