### DAVIS, Agent, v. CLARK. (No. 10939.)*

(Court of Civil Appeals of Texas. Fort Worth. Feb. 14, 1925. Rehearing Denied March 28, 1925.)

1. Action ⟨⟩1—Violation of legal right, as well as damage, necessary for "cause of action" or "right of action."

To give a "cause of action," which is synonymous with "right of action," there must not only be damage, but an act in violation of legal right.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cause of Action; Right of Action.]

2. Easements ⟨⟩61(8)—Prescriptive right of passage under railroad held not pleaded.

Complaint for destruction of passageway under defendant's railroad, depriving plaintiff of its use for his cattle, held not to plead a prescriptive right, but to show a use under mere license, which use, however long, does not ripen into a right.

3. Railroads ⟨⟩17—Knowledge of use of passageway under railroad to be notice to company must be by official authorized to permit use.

That knowledge by a person connected with a railroad of use by adjoining owner for his cattle of passage under the road may be notice to the company, relative to there being an im-

plied consent to the use, such person must be an officer or official of the company having power or authority from it to grant permission for the use.

**4. Easements ⊂⇒61 (8)—Plaintiff relying on prescription must plead it.**

Under Rev. St. art. 5706, as to pleading limitations, plaintiff relying on a prescriptive right to an easement must specially plead such title.

**5. Easements ⊂⇒5—Right to use passage for cattle under railroad held not acquired by prescription or necessity.**

Plaintiff, whose use of a passageway for his cattle under defendant's railroad was obstructed by defendant, but who was furnished a grade crossing, *held* to have acquired no right to such use by prescription or necessity, in view of Rev. St. arts. 5675, 5681.

Appeal from District Court, Montague County; J. H. Milam, Special Judge.

Action by Dick Clark against James C. Davis, Agent. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Garnett & Garnett, of Gainesville, for appellant.

Weldon & McDonald, of Wichita Falls, for appellee.

CONNER, C. J. This is an appeal from a judgment in appellee's favor for the sum of $1,500 assessed as damages for the alleged destruction on appellant's part of an easement over the right of way of the Missouri Kansas & Texas Railway Company of Texas, of which appellant was federal manager and Agent. The facts out of which the controversy arose, briefly stated, are that in December, 1886, Levin L. Clark was the owner of 150 acres of land over which the predecessors in title of the Missouri Kansas & Texas Railway Company desired to extend a line of railway. On the 4th day of December, 1886, said Levin L. Clark executed and delivered to said company a warranty deed conveying a strip of land through his 150-acre tract 100 feet in width. The railway line was extended over this strip east and west, leaving on its south side 33⅔ acres, and on the north side 115.83 acres. On the west end of the 150 acres was a small ravine or water drain, over which, in constructing the railway line, was built a wooden trestle of a width and height sufficiently large to admit of the passage under the railway track of livestock or even of a wagon and team. Later the railway company fenced its right of way, leaving about the center of the 150 acres two wide iron gates, about which no complaint is made, which afforded an even grade crossing from one side of the right of way to the other, and extended its right of way fences to the abuttments of the trestle or wooden bridge,

thus leaving the underground passage referred to unobstructed. On or about August 28, 1905, one W. C. Gray, by mesne conveyances from Levin L. Clark, had become the owner of the several parcels of the 150-acre tract lying on either side of the railway line. On that day, to wit, August 28, 1905, W. C. Gray conveyed to appellee by warranty deed the 33⅔ acres of land situated on the south side of the right of way. The filed notes in this deed called for the south line of the right of way as the north line of the 33⅔ acres. About a year later, to wit, on July 19, 1906, W. C. Gray also conveyed to appellee by warranty deed the 115.83 acres on the north side of the right of way. The calls for the south line of this parcel are for the north line of the right of way. Later appellee built his dwelling, water tanks, horse, and cow lots on the west end of the 33⅔-acre parcel on the south side of the railway line, including a small pasture of some 12½ acres, which was fenced off from the eastern part of the parcel which was farm land. He further inclosed pastures on the opposite side of the railway track off of the west end of the 115.83 acre parcel, aggregating 65 acres. Appellee was partly engaged in buying horses and mules which were permitted to range the several pastures mentioned, and thus afforded passage at will from one pasture to the other through said trestle. This condition of fences, trestle, and use by appellee continued without objection or protest for as long as 12 years before the institution of his suit, which was in December, 1921. Shortly prior thereto, however, through its agents and employés, the company replaced the wooden trestle with a concrete culvert 6 feet wide and 7 feet high, and caused its *right of way fences to be extended along* its right of way across the water drain or ravine, thus excluding appellee from the underground passage theretofore used by him.

Appellee claims a prescriptive right to an easement across the right of way mentioned under the track, and alleged that by reason of its destruction his land as a whole had been damaged in the sum of $3,000.

The evidence shows that the line of railway in question extends from Gainesville to Wichita Falls, and has been continuously used in the operation of the railway since the original construction of the road, and that of late years, previous to the cause of complaint herein made, numerous and heavy trains passed over the line. There was no complaint made of the form or manner of the construction of the cement culvert. On the contrary, it was agreed on the trial below that—

"It was necessary in the safe and proper operation of the railroad to take out the old culvert on appellee's land and put in a cement culvert in its place, and that appellant exercised due care in the construction of said ce-

---

ment culvert, except appellee claims the opening should have been left large enough and light enough for his cattle and horses to go through said opening from one part of his farm to the other as they had previously done."

[1] From the facts hereinbefore stated it seems clear that the appellee at no time acquired a right to any part of the right of way in question by deed. On the contrary, by the conveyance to the railway company it acquired a fee-simple title to its right of way. As a matter of public policy it was its duty to operate its trains and to preserve and maintain its right of way and all supports of its track in a condition and form suitable for the purposes of its business and the protection and safety of its operating employés and the traveling public; so that plaintiff's cause of action, if any he has, must rest alone upon the claim that he had acquired a prescriptive right which has been destroyed by appellant. The burden to do this is, of course, upon appellee. The question then arises, Has appellee shown a right of action on this ground?

In Black's Law Dictionary (2d Ed.) "cause of action" is defined as "matter for which an action may be brought. The ground on which an action may be sustained. * * * The term is synonymous with right of action, right of recovery."

In 1 Cyc. p. 641, it is said:

"The term 'cause of action,' in law, is generally understood as meaning the whole cause of action; that is, every fact which it is necessary to establish in order to support the right to judicial relief. As otherwise defined it consists in a right in the plaintiff, a correlative duty or obligation resting on the defendant, and some act or omission done by the latter in violation of the right."

In 1 R. C. L. p. 316, it is said:

"A cause of action presupposes a breach of some duty, and, if there is no breach of duty, there can be no cause of action."

On the next page it is said:

"It is a maxim of the law that damage without wrong does not constitute a cause of action; in other words, an act done, causing damage which the law will redress, must not only be hurtful, but wrongful."

In the case of Johnson v. King, 64 Tex. 226, it was said by our Supreme Court, from the headnote, that—

"To create a cause of action, there must not only be a loss to the plaintiff, but a loss resulting from the violation of some legal right."

[2] We have concluded that appellee showed no right of recovery in this case. In the first place, he did not plead limitation. His pleading in this respect is as follows:

"That for a period of more than 10 years plaintiff has had the use and enjoyment of a passageway under said tracks at a culvert or bridge of said company; that he used same as a means of entrance and exit from his respective portions of said land, and as a passageway for himself and his cattle and stock from one place to another; that it was with the consent and license of the said company and its agents, employees, and representatives that he used same, and that there was no other means of passage between the parts of his property so divided and separated by said railroad tracks; that on or about the month of July, 1919, defendants, in utter disregard of plaintiff's rights in the easement aforesaid, and over the objection and protest of plaintiff, proceeded to obstruct and permanently close said passageway, and that by reason thereof plaintiff's said property has been greatly depreciated in value; that he is deprived of any means of communication or passage over his said property for his livestock in the use of his said pasture; and that he has suffered actual damage in the sum of $3,000."

Such pleadings only show a mere license on the part of the railway company for the use appellee had long made of the underground passageway. In Washburn on Easements, p. 6, speaking of easements and license, it is said:

"It (an easement) always implies an interest in the land in or over which it is to be enjoyed. A license carries no such interest. Whatever right one has in another's land by license may, as a general proposition, be said to be revocable at will by the owner of the land in which it is to be enjoyed."

See, also, Carro v. Tucker, 2 Willson, Civ. Cas. Ct. App. § 454.

In Heilbron v. St. L. S. W. Ry. Co., 52 Tex. Civ. App. 581, 113 S. W. 613, the court says:

"It is a well-established principle of law in this state that the permissive use of a road or way for any length of time does not ripen into a right. * * * In this instance we feel that the testimony was sufficient to show only that the roadway had been used by the acquiescence and permission of the railroad company. To hold that the mere use by the public, without objection, of a portion of a railway right of way, and continued during the statutory period of limitation, or for twenty years, would cause the railway company to lose the use of its property, which it may need for legitimate purposes connected with its operation, would cause unutterable confusion, and bring about in this state a condition of affairs which would seriously interfere with railway traffic."

[3] The only evidence offered on the trial tending to show that the railway company had notice of the use made by appellee of the underground crossing was to the effect that during the period of such use trains in increasing numbers passed over the tracks, and that the section men during said time kept the road and right of way fences in repair. There was no specific evidence that at any time any one or more of these employés actually saw and actually consented to such use, and there was no evidence what-

ever that tended to show that any one in authority either expressly or impliedly agreed to or consented to the use shown. In order for such notice or knowledge to be notice and knowledge to appellant, it must have been known to some officer or official who had the authority or power from appellant, or said railway company, to grant permission to appellee to use said open space under said culvert and across the right of way at said place. See H. & T. C. Ry. Co. v. McKinney, 55 Tex. 176.

In St. L. & S. W. Ry. Co. v. Shiflet, 98 Tex. 331, 83 S. W. 678, it was said by our Supreme Court:

"We do not understand that persons become licensees, who, without the express or implied permission of a railroad company, habitually use its track as a convenience in passing from one point to another. There was no express permission shown in this case, nor do we think such permission can be implied from the mere fact that persons were accustomed to use the track as a pathway without objection on part of the defendant company. That no benefit could accrue to it from such use is apparent. * * * A license, whether express or implied, must proceed from the fact of some one having authority to grant it; and, we think, in the absence of proof, it should not be presumed that the servants of a railroad company who operate its trains have such authority. Therefore we are of opinion that a license should not be implied from the mere fact that persons were accustomed to use the track as a passageway, or from the further fact that the conductor or engineer knew of such custom."

[4] Article 5706, Revised Statutes, prescribes that:

"The laws of limitation of this state shall not be made available to any person in any suit in any of the courts of this state, unless it be specially set forth as a defense in his answer."

This rule of pleading applies alike to plaintiff and defendant. In the course of the opinion in Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568, it is said:

"Limitation, when relied upon either as a ground of action or of defense, must be specially pleaded."

In the case of Erp v. Tillman, 103 Tex. 574, 131 S. W. 1057, it was likewise said in the course of the opinion that—

"We agree that under the decisions of this court based on article 3371, Revised Statutes, a plaintiff in trespass to try title claiming title through the operation of the statutes of limitations must specially plead such title," citing Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568, and Molino v. Benavides, 94 Tex. 415, 60 S. W. 875.

[5] To have tolled or barred the right of the railway company to the use of its own property for purposes necessary and proper in the continuance of its own business it

would have been necessary for appellee to have shown that his possession and use of the underground passageway was not only peaceable but adverse to that of the railway company.

Article 5675, Rev. Statutes, declares that—

"Any person who has the right of action for the recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward."

"Adverse possession" is thus defined:

" 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Article 5681, Rev. Stats.

In Richards v. Smith, 67 Tex. 612, 4 S. W. 573, Justice Stayton says:

"To give title by limitation there must be an adverse claim and exclusive possession or occupation of the thing for the length of time and under the circumstances prescribed by the statute."

It seems beyond controversy that the railway company was at all times in the visible and adverse possession of the occupancy of its track and culvert and open space and the ground thereof, all of which was appropriate for and necessary to the proper continuance and operation of the trains passing over the track.

In the case of C. B. & Q. v. Hammond, 210 Ill. 187, 71 N. E. 576, the Supreme Court of Illinois held:

"Where, at the time a railroad was constructed across a farm, a wooden trestle was constructed over a ravine—trestles being at that time the only things used by railroads in crossing ravines and waterways—and the owner of the farm used the opening under the trestle for the passage of his stock from one part of the farm to another, and the railroad was in possession of the right of way continuously and openly for all railroad purposes, there was no presumption that the use of the passageway for the cattle was hostile or adverse to the railroad."

In C. B. & Q. Ry. v. Ives, 202 Ill. 69, 66 N. E. 940, the Supreme Court of Illinois held:

"Where a railroad company constructed a bridge over a sluiceway, and an adjoining property owner, whose farm was divided by the railroad right of way, used the sluice as a passage for cattle under the railroad track for a period equal to the statutory period of limitations, but there was nothing to show that such use was adverse to the rights of the railroad company, and not permissive, the landowner acquired no prescriptive easement in the use of the way."

In C. B. & Q. Ry. v. Johnson, 205 Ill. 598, 68 N. E. 1112, the Supreme Court of Illinois also held:

"To establish an easement by use, it must appear that the use was adverse, and enjoyed under circumstances indicating that it was claimed as a right, and not as a mere privilege."

In Blume v. Southern Ry. Co., 85 S. C. 440, 67 S. E. 546, the Supreme Court of South Carolina held, in substance, that neither private individuals nor the public can acquire by prescription any right to the use of the right of way of a railroad, which is inconsistent with the purpose for which it was acquired, or which will impair the railroad company in discharging its duties to the public. Where no exclusive possession of a part of a railroad right of way for the statutory period under a claim of right, adverse to the railroad company, nor any use thereof for that period inconsistent with the purpose for which the right of way was acquired, was shown, no right by prescription to use any part of the right of way was shown. A railroad company, either owning the fee in land for its right of way or only an easement therein, cannot alien or lose by prescription any right therein incompatible with the public purpose, or which was necessary in discharging its public duties.

In Heilbron v. St. L. S. W. Ry. Co., 52 Tex. Civ. App. 581, 113 S. W. 613, the court says, in part:

"In this situation the record presents the case of a portion of the uninclosed right of way of the railway company being used, without objection, by the public in a manner that did not interfere with its use by the railway company itself. The question then is, Is this sufficient to sustain a finding that the public had acquired a road by prescription? We think not. It is a well-established principle of law in this state that the permissive use of a road or way for any length of time does not ripen into a right. * * * To hold that the mere use by the public, without objection, of a portion of a railway right of way, and continued during the statutory period of limitation, or for twenty years, would cause the railway company to lose the use of its property, which it may need for legitimate purposes connected with its operation, would cause unutterable confusion, and bring about in this state a condition of affairs which would seriously interfere with railway traffic. A railroad is itself a public highway, constructed and operated for the public benefit."

In 2 Wait's Actions and Defenses, p. 693, it is said:

"The user and enjoyment of the right claimed, in order to become an easement by prescription, must have been adverse to the owner of the estate from which the easement is claimed, under a claim of right, exclusive, continuous and uninterrupted, and with the knowledge and acquiescence of the owner. * * * A tolerated or permissive user will not mature into a title by prescription. * * * A user which is in no way injurious to the right of the owner, nor likely to produce resistance or opposition, will not create a prescription."

Appellee cites in support of the judgment below such cases as G., C. & S. F. Ry. v. Rowland, 70 Tex. 298, 7 S. W. 718; Haas v. Choussard, 17 Tex. 588; M., K. & T. Ry. v. Cardwell (Tex. Civ. App.) 187 S. W. 1073; Daniels v. Wight (Tex. Com. App.) 249 S. W. 454. We think these cases are easily distinguishable from the one before us. In the case first cited it was held that an owner of inclosed land who had granted a right of way to a railroad company by a deed was entitled to such crossings over the railroad track as are reasonably necessary for the use of the premises inclosed. It was said to be the elementary law that a vendor who conveys to another land which is surrounded by the vendor's other land impliedly grants a right of way over the land which is not conveyed.

In the case before us, however, appellee made no grant of land to the railroad company, and the further undisputed fact is that the railroad company has left a good grade crossing, as provided by the statutes and of which appellee makes no complaint, about the middle of the 150-acre tract of land, to wit, about 733 feet east of the ravine mentioned.

The second case cited was one in which the plaintiff claimed damages occasioned by back water from a dam constructed by the defendant lower down on the stream. While in the course of the opinion authorities were referred to indicating that a prescription right to so back the water might be obtained, it distinctly stated that "there was no question of prescription involved," and the plaintiff in the suit does not appear to have insisted upon an abatement of the nuisance.

The third case above cited was one in which a railroad company closed its right of way gates theretofore maintained and left open a causeway, similar to the one involved in this case, making preparation for its use by tenants on the north side of the railway track in passing from their residences to the south side. The negligence alleged was in leaving a spike extended in a downward direction which caused the plaintiff in the suit to be injured while passing through this causeway. And, among other things, this court said:

"In preparing the underground passageway, as they did, is susceptible of no other reasonable construction than that it was intended that such underground passageway should be substituted for that which had been closed, presumably for appellant's convenience. It is certainly true that within the knowledge of appellant's employés, not only of the section men, but of those higher up, the owners and tenants of the D. C. Jordan farm continued to use, as they were compelled under the circumstances to do, the underground passageway from

about 1904 or 1905, when the crossing gates were closed, until the plaintiff's injury in April, 1911, and there is no evidence indicating that appellant, or any one for it, protested against such use of the underground passageway. On the contrary, the evidence as a whole relating to the subject as we view it, amounts to a recognition on appellant's part of a right to so use such underground passageway, or certainly to an invitation and permissive use of the same, and whether one or the other, as we think, can make but little difference in the degree of care required of appellant in maintaining the underground crossing."

The last case referred to, Daniels v. Wight, was one which merely involved a question of damage to the land of an adjoining owner by the construction on the part of the railway company of its switch track with embankments.

On the whole, we conclude that appellee established no right to the damages sought and recovered by him, and the judgment will accordingly, for the reasons stated, be reversed and here rendered for appellant.