Lake View Avenue Building Corporation, Appellant, v.
R. L. McFarland, Appellee.

Gen. No. 35,105.

Heard in the third division of
this court for the first district at the April term, 1931.
Opinion filed March 16, 1932.

PRUITT & GREALIS, for appellant.

Rubens, Fischer, Mosser & Barnum, for appellee; Kenneth V. McFarland, of counsel.

Mr. Justice Friend delivered the opinion of the court.

Plaintiff obtained judgment by confession in the municipal court of Chicago against defendant in the sum of $325, for rental alleged to be due under a written indenture of lease. This judgment was subsequently opened on defendant's motion and leave was given him to appear and defend. Trial was had by jury, resulting in a verdict and judgment for defendant, from which this appeal is prosecuted.

It appears from the evidence that plaintiff demised to defendant an apartment on the top floor of its building located at 2440 Lake View avenue in Chicago for a term of three years commencing October 1, 1927, at a stipulated monthly rental of $295. Defendant was allowed free occupancy of the demised premises for a period of five months and occupied the same until July, 1928, when he vacated the same because the landlord failed to repair a defective roof which caused water to drip through the ceiling of his apartment after every rainfall. The judgment by confession was rendered for rental alleged to be due for August, 1928, the month following defendant's removal from said premises.

Defendant's affidavit of merit avers among other things, "that at the time said lease was made plaintiff knew that the roof of said apartment was defective and dangerous, but suppressed its knowledge of the condition; that defendant could not discover the dangerous and defective condition of the said roof by reason of the character of its construction; that during the defendant's occupation of the premises, by reason of the defective condition of the said roof the said premises and the furniture and other property of the

defendant were damaged by the flooding of water and rain through said roof.upon at least ten different occasions; that upon each such occurrence the defendant promptly notified the plaintiff and the plaintiff promised the defendant to repair the said defective roof; and the defendant, relying upon the plaintiff's promise to repair the said defective roof, and believing that the plaintiff was engaged in making such repairs as would prevent the recurrence of such flooding of the defendant's premises, remained in possession of said premises; that the defendant believed that the plaintiff had performed his promises to make the necessary repairs to the roof; that, when the defendant's premises were again flooded by water and rain, the lighting fixtures in the dining room became rusted and filled with water and particles of plaster fell from the ceiling in the dining room and one of the bedrooms; that when the defendant called the plaintiff's attention to these matters, the plaintiff said that the nature of the defect had not been previously understood, but that such repairs would immediately be made, that there would be no further trouble; that notwithstanding this assurance by the plaintiff and further similar promises and representations by the plaintiff upon subsequent occasions, the plaintiff took no action remedying said intolerable conditions; that on July 28, 1928, the defendant ceasing to rely upon and have confidence in the promises of the plaintiff, removed from said premises together with his household goods and other belongings.''

Considerable evidence was adduced at the hearing upon the salient question of fact relating to the leakage of water through the ceiling of the demised premises. Grace McFarland, wife of defendant testified that ''the water came through in the dining room, all over the ceiling. It got so bad it dropped rusty water out of the chandelier. It stayed wet so long that the plaster

flaked and fell down. It was that way during the ten months we lived there. The leak occurred every time it rained. I can remember putting down pails and buckets at least a dozen times. The chandelier was a sort of urn shape and I noticed it dripped out of that drop by drop and it was very rusty. I had Joe (meaning Joe Simon, engineer of the building) come up and empty it and he poured out a gallon of water into a pail. He did that a good many times.'' Defendant's testimony was to like effect.

Joe Simon, the engineer in charge of the premises, testified that his attention was called to the leak in the ceiling and he observed water coming through the center fixture, but that he ''couldn't do anything about the leak. I guess Mr. McFarland put a pan under the leak or something. I couldn't find out where the water was coming from.'' When asked whether he had talked to defendant on more than one occasion regarding the leak in the roof, Simon stated he did not remember but ''maybe I did. I do remember one occasion.'' From an examination of the evidence, the fact of the leakage and its continuance during the entire period of occupancy seems to have been definitely established, the only conflict being as to the extent and cause thereof.

The defense interposed to the payment of rent is twofold; it is averred that plaintiff had knowledge of the defective and dangerous condition of the roof, but withheld this information from defendant; and facts are also alleged upon which the defense of a constructive eviction might be predicated. With reference to the first of these defenses, plaintiff insists that the evidence fails to sustain the charge that the leakage was caused by a defective roof, and also that no proof was offered to show knowledge of the defect and suppression of such knowledge by plaintiff. While it is true that the precise cause of the leakage through the ceil-

ing of the demised premises was not known or explained at the hearing, there is abundant evidence that water dripped through the ceiling following every rainfall during the entire period of occupancy, and it is a fair inference that the dripping came from the roof through the ceiling into defendant's apartment. The roof being no part of the demised premises, it was the landlord's duty to maintain the same in good repair.

Plaintiff urges several grounds for reversal, but the controlling question is whether the continued leakage of water through the ceiling of the apartment during the period of occupancy, together with the fact that plaintiff, with knowledge of this condition, failed to remedy the defect, constituted an omission of duty on the part of plaintiff which deprived defendant of the enjoyment of the demised premises, and rendered them unfit for occupancy to such an extent as to constitute a constructive eviction as a matter of law.

Plaintiff relies chiefly on the early cases of *Keating v. Springer,* 146 Ill. 481, and *Barrett v. Boddie,* 158 Ill. 479, wherein the court held that to constitute eviction there must be something of a grave and permanent character done by the landlord, for the purpose and with the intention of depriving the tenant of the enjoyment of the demised premises. However, our Supreme Court has apparently modified the doctrine enunciated in the foregoing cases in its later decisions, for in *Gibbons v. Hoefeld,* 299 Ill. 455, they stated in the course of their opinion that ''we do not understand the law to be that an omission of duty by the landlord which has the effect of depriving the tenant of the enjoyment of the demised premises must be shown to have been with the intent that such should be the effect of the omission.''

The cases of *Gibbons v. Hoefeld, supra,* and *Kinsey v. Zimmerman,* 329 Ill. 75, seem to enunciate the principles governing the present rule applicable to con-

structive eviction. In the former case, Hoefeld entered into a lease with Gibbons for premises to be used in connection with his business, which provided, among other things, that the taking of possession by the lessee should be conclusive that the premises were in good repair and also requiring the lessee to make such repairs about the premises as might be necessary. Before entering the demised premises, Hoefeld inspected the same and found moisture about the walls of the basement. The landlord's attention was called to this, and he thereupon promised to waterproof the basement walls and make them water-tight. The tenant, relying upon the promise, took possession of the premises and fitted the basement up as a salesroom containing merchandise of various kinds. Shortly after taking possession, the tenant found that whenever it rained water would seep through the basement walls and onto the floor of the salesroom, sometimes to the extent of an inch or an inch and a half in depth, making it necessary to constantly mop the floor and occasionally suspend business there until the salesroom had been made dry and usable. The landlord, when apprised of this condition, tried to remedy the defect, but was unsuccessful. Notwithstanding the efforts made in good faith by the landlord to render the basement walls water-tight, the court held that the tenant was justified in vacating the premises upon the theory that he had been constructively evicted therefrom, and in the course of its opinion laid down the rule heretofore quoted, eliminating the question of intent as a necessary factor in cases of this kind.

In the more recent case of *Kinsey v. Zimmerman, supra,* a judgment by confession was entered in the municipal court, as here, which was later set aside and defendant given leave to appear and defend. The defense interposed to the action for rent was that of constructive eviction. Defendants were architects occupying the entire front of the top floor of the Steinway

Hall Building in Chicago. A portion of the demised premises was used as a drafting room, containing tables at which five or six people were constantly employed. Over a part of these tables, and several inches from the ceiling, there extended for a distance of several feet an iron pipe, one end of which was so connected with the roof as to permit the drainage of water from the roof, and the other end of the pipe extended into a shaft which connected with the sewer in the basement. A leakage occurred in a portion of this pipe, causing the water to drip down upon the tables where the draftsmen were at work. Defendant complained of this condition and plaintiff agreed to remedy the defect. Some temporary repairs were in fact made, but the pipe continued to leak. Defendants thereafter continued to complain of the condition and finally advised the landlord that unless the leak was stopped they would be obliged to seek other quarters. The landlord did nothing further to remedy the defect and defendants vacated the premises. The trial court entered a judgment on the jury's verdict in favor of the landlord. The Appellate Court, in reversing the judgment, held as a matter of law that the defects complained of were insufficient to justify the trial court in submitting the case to the jury on the question of constructive eviction, and there being no dispute as to the amount of the judgment, reversed and remanded the cause with directions to confirm the judgment entered by confession. In the course of its opinion, the Supreme Court, following the rule laid down in *Gibbons v. Hoefeld,* stated that the landlord without being guilty of actual disturbance of the tenant's possession, may yet do such acts as will justify or warrant the tenant in leaving the premises, and if he does, the circumstances which justify such abandonment, taken in connection with the act of abandonment itself, will support a plea of eviction as against an action for rent, and that the question of constructive eviction is one of

fact, depending upon the circumstances of the particular case, to be determined by the jury. Indeed, the cases generally, including *Barrett v. Boddie* and *Keating v. Springer,* upon which plaintiff relies, enunciate the rule that the question is always one of fact to be determined by the jury.

In the instant case the evidence is very scant as to whether plaintiff made any effort to repair the defect which caused the leakage, although it is apparent from the record that defendant complained constantly. In both the *Hoefeld* and *Kinsey* cases, and especially in the former, the landlord tried to remedy the defect, but failed, thereby eliminating from the cases the element of intent to deprive the tenant of the use of the premises. Notwithstanding this fact the courts held in both instances that there was a constructive eviction. We therefore conclude that the element of intention which was laid down as a necessary factor in the earlier decisions seems to have been removed as a necessary element to constructive eviction by recent decisions, and that continued neglect on the part of the landlord to remedy a defect, which makes the demised premises or a part thereof, unfit for occupancy, is sufficient to justify a submission of the question to the jury.

Plaintiff by its brief devotes considerable argument to the question of agency, it being contended that there was no proof showing the authority of the engineer, the manager of the building and others, to bind the corporation. The only purpose for which the question of agency became pertinent was to show that the plaintiff corporation through its agents had knowledge of the condition of the roof. Obviously, these individuals were in charge of the building for the purpose of leasing, receiving complaints and otherwise, and their knowledge would, of course, be imputed to the building corporation whom they represented.

Error is further assigned for failure of the court to submit certain instructions offered by plaintiff. One of these embodied the element of intent enunciated in the case of *Barrett v. Boddie,* and for the reasons already stated, we believe this instruction was properly refused. Another told the jury that plaintiff was not liable for defects in the roof of said premises when the lease was made, unless they were latent defects, and plaintiff had been guilty of fraud or actual deceit in concealing or not informing the defendant of such defects. As heretofore stated, we are of the opinion that it was the landlord's burden to repair the roof and defendant was required to prove only that the landlord knowingly failed in his duty in that regard. Whether such failure was caused by fraud, deceit, carelessness or otherwise, is entirely immaterial. Two other instructions related to the question of agency, which has already been discussed, and for the reasons stated, we believe the court properly refused these instructions.

Finding no reversible error, the judgment of the municipal court will be affirmed.

*Affirmed.*

Hebel, P. J., and Wilson, J., concur.