PEORIA & EASTERN RAILWAY COMPANY *et al.*, Plaintiffs-Appellants, *v.* GLENN KENWORTHY *et al.*, Defendants-Appellees.

(No. 11472;

Fourth District—September 13, 1972.

CRAVEN, J., dissenting.

Phillips, Phebus, Tummelson & Bryan, of Urbana. (Darius E. Phebus and Joseph W. Phebus, of counsel,) for appellants.

Summers, Watson and Kimpel, of Champaign, for appellee Glenn Kenworthy.

T. Gaillard Knappenberger, Jr., of Champaign, for appellee Vaughn McDowell.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

The trial court directed a verdict for defendants at the close of plaintiffs' evidence in an action for indemnity, and plaintiffs appeal.

Following the tender of the defense to defendants, which was refused, the plaintiffs settled a personal injury action alleged to have resulted from the obstruction of the view of an automobile driver at the intersection of the railroad tracks and a street in Leroy. The obstruction was a trailer owned by Kenworthy, who had parked or left the trailer at the direction of and with the permission of McDowell, who owned the property adjacent to the property of the plaintiffs.

The plaintiffs' right-of-way and tracks passed through Leroy in a northwest and southeast direction traversing Lots 2, 3 and 4 in Block 21. Plaintiffs owned that part of Lot 4 lying north of the center line of the main tracks and had a right-of-way 30 feet wide across Lots 3 and 2. West

Street abuts the west side of Lot 4 and Pine Street abuts the north side. The tracks cross West Street at a point slightly south of the intersection of West and Pine Streets.

On the 5th of February, 1967, there was a trailer approximately 32½ feet long and 8 feet wide parked on the easterly part of Lot 4 with its rear end 11 or 12 feet north of the north rail of the railroad. This trailer parked in this position so obstructed the view of one proceeding west on Pine Street that according to one witness, Mr. Roy Markham, the view of the railroad was blocked until the front bumper of a vehicle was 5 feet from the track. It would appear that if the trailer were not in this position, one would have a view of the railroad for a substantial distance.

There is sufficient testimony that the whistle or horn of the train was being properly sounded for the crossing for an appropriate distance, that the headlight of the train was burning and that the bell was ringing. So far as the record shows, there was no negligence on the part of the railroad except the failure to keep its right-of-way clear of obstructions within 500 feet of the crossing. The only obstruction mentioned in the record is this trailer truck.

The railroad, believing that it was exposed to liability by reason of a failure to conform to a non-delegable statutory duty to keep its tracks clear, settled the case with the injured plaintiffs for about $25,000, and seeks recovery from the owner of the trailer, and also from the owner of adjoining land who directed the owner of the trailer to park the trailer on railroad property under the belief that the particular area was his own land.

The complaint in two counts alleged that Kenworthy wrongfully parked the trailer, or that he unlawfully and wrongfully parked the trailer without plaintiffs' consent upon the land of the plaintiffs in such a way as to block the view of motorists at the crossing, and that injury to the motorist resulted. Each count alleged that the defense of the original action for personal injuries was tendered to defendants but was refused. Kenworthy denies all the allegations.

A count directed against the defendant, McDowell, alleged that the latter unlawfully and wrongfully informed Kenworthy that McDowell was the owner of the land and that Kenworthy might park his trailer on the land described, and that the latter did park there. McDowell denies the several allegations.

Each defendant filed affirmative defense that plaintiffs were active tortfeasors not entitled to indemnity.

A conductor, two brakemen and two engineers employed by plaintiffs testified that they had seen the trailer, or similar trailers, parked in the same or similar locations from time to time over periods varying up to

several months. Each testified that he did not know the lines establishing the property or right-of-way of the plaintiffs. No one of them had made a complaint or report to any railroad superior or officer.

The testimony of defendants is that the trailers were parked upon the authority of McDowell as a matter of Kenworthy's convenience upon an intermittent rather than a continuing basis. There is a suggestion that the parking of the trailers was incident to McDowell's repair of Kenworthy's tractors. The record shows that in consideration of such parking, Kenworthy was to mow the weeds and was to remove a tree for McDowell.

The trial court filed a memorandum concluding that the several trainmen were agents of the plaintiffs, that it was incumbent upon such employees to notify appropriate railroad authorities of obstructions to vision and determined that plaintiffs had constructively discovered the condition at issue, done nothing to correct or to remove the danger, and that such failure constituted acquiescence in the acts of defendants. Having decided that negligence or fault of plaintiffs was of the same quality or character as that of defendants, the court directed a verdict for defendants under the rule of *Pedrick*, 37 Ill.2d 494, 229 N.E.2d 504.

The trial court's reasoning was based chiefly upon an analysis of *Chicago & Illinois Midland Ry. Co. v. Evans Const. Co.*, 32 Ill.2d 600, 208 N.E.2d 573, and emphasizes the phrase "unless after discovery of the danger he acquiesced in the nature of the condition". The court says that there is no argument taking the plaintiffs' evidence based on the testimony of all members of the train crew that the danger had been discovered and that nobody had made any effort to correct it.

Plaintiffs argue that the danger was not discovered by the railroad, and that the knowledge which the crew members had was not imputable to the railroad upon the ground that such knowledge was not shown to be within the scope of the authority of the agents.

■■ In reaching such determination, the trial court did not take into consideration evidence, or absence of evidence, concerning the scope of employment of the various operating trainmen. The rule is that the burden of proof is on the person asserting agency. (*Brill v. Davajon*, 51 Ill.App.2d 445, 201 N.E.2d 253.) The affirmative defense pleaded would also put such burden of proof upon defendants.

■■ *Restatement of the Law of Agency*, Vol. 1, p. 505, par. 228, states that the conduct or duties which the employee is employed to perform determines the scope of employment. Par. 229 provides that to be within the scope of employment, the conduct must be of the same general nature as that authorized by the employer, or for which the employee is employed. The rule that notice to the agent or employee is notice to the

principal or employer is not applicable unless the notice has reference to business in which the employee is engaged and pertains to matters coming with that employment. *Lowden v. Wilson*, 233 Ill. 340, 84 N.E. 245.

In *United Disposal Co. v. Indus. Com.*, 291 Ill. 480, p. 485, 126 N.E. 183, a timekeeper learned that certain employees were using motor trucks in deviation from the authorized and instructed route. It was contended that acquiesence in the deviation should be imputed to the employer. The court determined that the timekeeper had no authority over the use of the trucks and that knowledge would not be imputed to the employer. In *Chicago, Burlington & Quincy R.R. Co. v. Hammond*, 210 Ill. 187, 71 N.E. 576, it was held that a land owner's advise of his claim of rigth-of-way made to a section foreman would not be notice imputed to the railroad. In *People v. Gullborg*, 324 Ill. 538, 155 N.E. 324, it was held that notice of a proceeding to increase a tax assessment served or given to an agent to collect rent was not a notice to the owner of such proceeding because it was not within the nature or scope of the agency. Distinguish *Lake View Ave. Bldg. Corp. v. McFarland*, 265 Ill.App. 517, where notice was given to the manager "in charge of the building".

In this record the available evidence is that the trainmen did not know the boundaries of the property owned by the railroad. An inference may be drawn that the conditions upon such property were not a part of the work they were employed to perform, or over which they possessed any authority.

In determining that there was no liability to indemnify plaintiffs under the rule of *Chicago & Illinois Midland Ry. Co. v. Evans Const. Co.*, 32 Ill.2d 600, 208 N.E.2d 573, the court did not sufficiently distinguish the facts and reasons for the rule in that case from the facts in this case. In *Midland* the court said, at p. 576:

"The difficulty with this position is that there is no proof as to how the tie came to be where it was when the accident occurred, or how long it had been there. * * * There is *no evidence which suggests that the defendant or any of its employees placed the tie on the tracks,* and there is no evidence which suggests that the defendant knew that that it was there. In the language of the Restatement, the evidence does not show that the dangerous condition was created by the defendant. The breach of duty relied upon to shift the entire cost of the injury from the plaintiff to the defendant must therefore be the defendant's failure to discover and remove the tie,—a failure to see that the premises were safe for the work that was to be done. But exactly that same duty rested upon the plaintiff." (Emphasis supplied.)

It is clear that in the *Chicago & Illinois Midand* case the court was not

satisfied that there was any evidence that the defendant, Pillsbury, placed the tie on the track. Here, there can be no question that the defendant, Kenworthy, placed the trailer within 12 feet of the railroad tracks upon the plaintiffs' right-of-way and probably upon plaintiffs' property.

■■ The opinion in *Midland* points out that indemnity is proper where there is a qualitative difference between the forms of conduct of the tortfeasors, *i.e.*, primary or active conduct as compared with secondary or passive conduct. In *Mullins v. Crystal Lake Park Dist.*, 129 Ill.App.2d 228, 262 N.E.2d 622, it was said that the physical act causing the injury is active negligence, and distinguished *Midland v. Evans* because differing culpabilities were established. In *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630, the differing culpabilities were measured as between the contractor who employed improper methods and the architect who failed to intervene. (See *Lambert v. D. J. Velo & Co.*, 131 Ill.App.2d 30, 268 N.E.2d 1 70.) In *Shell Oil Co. v. Hercules Construction Co.*, 74 Ill.App.2d 166, 219 N.E.2d 392, it was held that one who builds a defective scaffold is more actively culpable in terms of indemnity than one who fails to discover the defect. (See *Lindner v. Kelso Burnett Electric Co.* (133 Ill.App.2d), 273 N.E.2d 196, and *Rovekamp v. Central Const. Co.*, 45 Ill.App.2d 441, 195 N.E.2d 756.) The authorities last cited demonstrate the validity of the distinctions in the facts of this case from those in *Chicago & Illinois Midland Ry. Co. v. Evans*.

In *Gulf, Mobile & Ohio Ry. Co. v. Arthur Dixon Transfer Co.*, 343 Ill.App. 48, 98 N.E.2d 783, the railroad recovered in indemnity when one of its employees was caught between a railroad car and a truck parked too closely to the track. In *United States v. Chicago, Rock Island & Pacific Ry. Co.*, 171 F.2d 377, the railroad was indemnified for amounts paid to an employee who was injured when his foot was caught between the footboard of the engine and a pile of hardened black top material which the defendant permitted to accumulate immediately adjacent to the track. In each of those cases, the railroad would have had a duty to discover the hazard. The court, at p. 575, said:

"In these cases the dangerous condition *that caused the injury was created by the defendant* and the plaintiff's negligence amounted to no more than failure to discover and remedy it. Section 95 of the Restatement and Restitution is as follows:

'Where a person has became [sic] liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other

for expenditures properly made in the discharge of such liability, *unless after the discovery of the danger* he acquiesced in the continuation of the condition.'" (Emphasis supplied.)

■■ Upon consideration of the facts in evidence concerning the conduct of the respective parties, and of the rules relating to knowledge imputed through plaintiffs' servants, we must conclude that the trial court erred in directing a verdict for the defendant at the close of plaintiffs' evidence.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

SMITH, J., concurs.

Mr. JUSTICE CRAVEN dissenting:

Essentially, the question in this case seems to me to be whether the railroad and the defendants Kenworthy and McDowell were joint tort feasors, or whether the railroad's conduct constitutes merely passive negligence so as to permit of indemnification.

In *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630, the Illinois Supreme Court observed that Illinois does not allow contribution among joint tort feasors but that it does allow a passively negligent tort feasor to obtain indemnification from an actively negligent tort feasor. The history of this judicial rule is thoroughly discussed in *Sargent v. Interstate Bakeries, Inc.*, 86 Ill.App.2d 187, 229 N.E.2d 769.

The railroad's conduct in this case is to be measured by the acts and doings of its employees—the train crew—and that train crew knew about the truck obstruction and had known about it or similar obstructions for a period of several months. To now say that the knowledge of the train crew is not knowledge of the railroad and at the same time that you will measure the railroad's culpability by measuring the conduct of the train crew is totally unrealistic.

The trial court filed an extensive memorandum opinion in this case in support of its conclusion that the plaintiff here sought contribution among joint tort feasors. The trial court determined that in this case the plaintiff had discovered the dangerous condition and had done nothing to remedy it. The trial court found and the evidence is to the effect that the members of the train crew knew of the danger and no one had made any effort to correct it.

After discovery of the danger, acquiescence in the continuation of the condition is not passive negligence within the contemplation of indemnity. I would affirm.