(No. 3617—

EDWARD COUGHLIN, SR., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 12, 1944.*

*Rehearing denied November 14, 1944.*

WILLIAM J. APLINGTON, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR AND ROBERT V. OSTROM, Assistant Attorneys General, for respondent.

ECKERT, J.

Claimant, Edward Coughlin, Sr., is the father of Edward Coughlin, Jr., deceased, a former air compressor operator employed by the Department of Public Works and Buildings of the State of Illinois. About nine-thirty o'clock on the morning of December 31, 1940, while the deceased was driving a truck of the respondent, the truck was struck by a train on the tracks of the Chicago and Alton Railroad Company. Edward Coughlin, Jr., was instantly killed.

The deceased was first employed by the Department for continuous service as a skilled laborer on March 6, 1935. On July 19, 1937, he was assigned to duty as an air compressor operator, his duties including the driving of the motor-driven truck containing an air compressor. His wages during the year next preceding his death were $1,276.80.

Coughlin was unmarried, and left surviving him his father, Edward Coughlin, Sr., the claimant, sixty-five years of age at the time of the accident, three surviving sisters and four nieces and nephews, children of a deceased sister. Two of his sisters were married and living away from home. His four nieces and nephews made their home with the deceased, and with his father and unmarried sister, but the four nieces and nephews were supported by one of them who worked and by their father who did not live in the same house. The claimant was not employed, owned no property whatsoever, and was supported by his single daughter, Charlotte and the deceased, in the proportions 12/22 by the deceased, and 10/22 by the daughter. During the year preceding the death of the deceased, Charlotte earned $1,051.54. Claimant seeks an award under the provisions of the Workmen's Compensation Act.

At the time of the accident, the employer and employee were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. The respondent contends, however, that the accident did not arise out of and in the course of the employment.

At the time of the accident, Coughlin, with the consent of his superior, was staying at the Stewart House Hotel, located at Van Buren and Water Streets, in the

City of Wilmington, Illinois. He was instructed by his superior to use the respondent's truck only while doing respondent's work, and to take the shortest available route to and from his work. He was also required to report for work at seven thirty o'clock in the morning. The hotel is two blocks north of Alternate U. S. Route No. 66. Claimant's work was at the intersection of Regular U. S. Route No. 66 and U. S. Route No. 6. The intersection of these two highways was a mile and a half west of and ten miles north of the hotel.

On the morning of the accident, Coughlin left the hotel, proceeded two blocks southeasterly on Water street, then northeasterly on Alternate U. S. No. 66 through the City of Wilmington, and then directly north on Alternate U. S. No. 66 until he turned east at a point a few miles north of the intersection of Kankakee River Drive and Alternate U. S. No. 66, to stop at the Elwood Ordnance Plant. At the Ordnance Plant he talked to two foremen about securing a job. He then drove back to Alternate U. S. No. 66, drove south until he reached the Kankakee River Drive, which extends in a westerly and northwesterly direction between Alternate U. S. No. 66, and Regular U. S. No. 66, and then drove west on Kankakee River Drive. For a distance of about four thousand feet extending immediately west of U. S. Alternate No. 66, Kankakee River Drive was then a gravel road in fair condition. Beginning at a point four thousand feet west of Alternate U. S. No. 66, extending from such point to Regular U. S. No. 66, Kankakee River Drive had an improved surface. The Chicago and Alton Railroad crosses Kankakee River Drive at a point two thousand six hundred feet west of Alternate U. S. No. 66. Coughlin, driving West on Kankakee River Drive, was killed at this intersection.

The claimant contends that the deceased at the time of the accident was at a place where he reasonably had a right to be in the course of his employment, that he was then and there on duty, and that therefore his death is compensable. He contends that when Coughlin left the intersection of Alternate U. S. No. 66, and Kankakee River Drive, and went North to the Elwood Ordnance Plant, he was temporarily on an errand of his own and outside of the course of his employment; that after he returned from the Ordnance Plant, again reached the intersection, and started west along Kankakee River Road, he was back in the course of his employment; that from the moment that he turned west on Kankakee River Drive, he was in such a reasonable and proper place as he would have been had he left the hotel for his place of duty and not gone to the Ordnance Plant.

A person leaving the Stewart Hotel to go to the intersection of Regular U. S. No. 66 and U. S. No. 6, where the deceased was employed, has a choice of three routes. (1) He might go southwesterly from Wilmington on Alternate U. S. No. 66 to Regular U. S. No. 66, and then straight north on Regular U. S. No. 66 to the intersection. This route would be the longest, but also the only route entirely of concrete. (2) Or he might go northeast by Alternate U. S. No. 66 to its intersection with the Kankakee River Drive, then west and north along Kankakee River Drive, thus passing the scene of the accident. (3) Or he might go north from the Stewart Hotel by what is known as the "stub" road along State Aid Route No. 44 to the Kankakee River Road, and then on to Regular U. S. No. 66. This is the shortest route and is approximately one and one-fourth miles less than by way of Alternate 66 and Kankakee River Drive. From an inspection of the maps offered in evidence, this third route is obviously

the direct route from the hotel to Coughlin's place of employment.

The respondent contends that the deceased was not killed in the course of his employment because he was using the respondent's truck for an unauthorized purpose, and was not performing any duties of his employment when the accident occurred; that even if Coughlin had intended to report at the junction of U. S. 6 and 66 to perform his work, he had chosen a circuitous way for his own benefit, and incurred risks which did not arise out of and in the course of his employment; that not having returned to the regular course of his employment at the time he was killed, his death did not arise out of his employment. Respondent contends that had the claimant not met with the fatal accident, he could have continued in a westerly direction until he reached State Aid Route No. 44, at which time he could have gone south, and returned to the City of Wilmington, or he could have followed the River Road to the junction of Routes 6 and 66, or he could have proceeded to his home in LaSalle.

It is clear from the testimony and the exhibits, that the shortest route available to the deceased from his hotel to his work was over the "stub," State Aid Route No. 44, and the Kankakee River Road, which deceased would have reached in a short time if he had not been struck by the train. Since the deceased was using the respondent's truck in an unauthorized manner, since he had not reported for work at the required hour, the fatal accident occurring some two hours thereafter, and since he had not yet reached any part of what is clearly the direct route to his employment, it is speculative at best to assume that he was on his way to work when the accident occurred. He had unquestionably been on a mission of his own from which he had not returned when he was

killed. Claimant's contention that State Aid Route No. 44 was not a fully paved way and went partly through a congested portion of Wilmington, that others often used Alternate U. S. Route No. 66 to reach the point where the deceased turned west to the River Road, does not change the fact that the obviously direct route to Coughlin's place of employment was by State Aid Route No. 44.

The controlling factor in determining whether an accidental injury arose out of and in the course of the employment is whether the employee was in the orbit, area, or sphere of duty. It is a question of fact. (*Schafer* vs. *Industrial Commission*, 343 Ill. 573.) Where an employee goes upon a personal mission, and while on such mission an accident occurs, the accident clearly does not arise out of and in the course of the employment. Although the personal mission may have been accomplished, unless the employee is once more engaged in the duties of his employment when the injury occurs, it is still not compensable. The Workmen's Compensation Act should receive a liberal construction, so that its beneficent intent and purpose may be reasonably accomplished, but its benefits cannot be extended to cover injuries which do not occur in the course of and arise out of the employment. The words "arise out of" have reference to the cause or origin of the accident; the accident must happen out of the transaction of the business in which the workman is engaged. (*United Disposal Company* vs. *Industrial Commission*, 291 Ill. 480.) When Coughlin chose to go on a mission of his own, he was clearly transacting his own business. The fact that the mission had been completed, that he was on his way to an unknown destination, and had reached a point which he *might* have reached by taking an indirect route to reach his employment, had he gone to his employment rather than upon a mission of

his own, is insufficient to justify a holding that the fatal accident happened out of the transaction of the respondent's employment.

The court is of the opinion that the accident did not arise out of and in the course of the employment of Edward Coughlin, Jr.

An award is therefore denied.